553 A.2d 222

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Herbert Louis SINGLETON, Jr.**

**Misc. (Subtitle BV) No. 15, Sept. Term, 1987.**

Court of Appeals of Maryland.

Feb. 13, 1989.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Asst. Bar Counsel, for Atty. Grievance Com'n of Maryland.

Herbert Louis Singleton, Jr., Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

BLACKWELL, Judge.

This is the third occasion we have had to consider disciplinary violations against Respondent, Herbert Louis Singleton, Jr. (Singleton).[1] On July 8, 1987, the Review Board of the Attorney Grievance Commission of Maryland (Commission), directed Bar Counsel to file disciplinary charges against Singleton. The charges involved specific complaints of five unrelated clients. A Petition for Disciplinary Action was filed in the Court of Appeals on August 7, 1987.

---

1. Singleton was suspended indefinitely with the right to reapply for admission, and has been suspended indefinitely on an unconditional basis. *Attorney Grievance Commission v. Singleton,* 305 Md. 259, 267, 503 A.2d 714, 719 (1986); *Attorney Grievance Commission v. Singleton,* 311 Md. 1, 19, 532 A.2d 157, 166 (1987). He was also privately reprimanded on July 8, 1982.

Singleton, a member of the Maryland Bar since June 20, 1974, is currently suspended from the practice of law. Pursuant to Md.Rule BV9(b), we referred the charges for hearing to Judge Thomas Ward of the Baltimore City Circuit Court.

In a Memorandum of Findings of Fact and Conclusions of Law, which we shall summarize, the Circuit Court for Baltimore City found the following violations against Respondent:

1. Singleton violated the Code of Professional Responsibility,[2] Disciplinary Rules (DR) 1–102(A)(5)–(6), DR 6–101(A)(3) and DR 7–101(A)(1)–(3) in his representation of Emilie Underwood. The trial court found that Singleton was retained by Underwood on behalf of the heirs of the estate of Clarence Veney in 1977. Veney had been seriously injured, and later died, allegedly the result of an accident involving a Metropolitan Transit Authority bus in Baltimore City. Singleton "failed to file suit timely," "failed to investigate the case in an efficient and competent manner," "failed to keep in touch with his client," and "even failed to return her file long after many years have passed."

2. As to the Complaint of Warren M. Smith, Petitioner sustained the charges of violations of DR 1–102(A)(4)–(6), DR 2–110(A)(2), DR 6–101(A)(3) and DR 7–101(A)(1)–(3). The trial court found that Singleton, "after being retained by Warren Smith for the purpose of obtaining his divorce, failed to take any meaningful action towards the eventual resolution of this retention." The court elaborated that, "he failed to keep Mr. Smith informed of progress, and those reports he did make were either inaccurate or downright dishonest."

---

**2.** All references to disciplinary rules are to the Code of Professional Responsibility, Md.Rule 1230, Appendix F (1986).

3. As to the Complaint of Phyllis Gaither, Petitioner sustained the charges of violations of DR 2–110(B)(2), DR 5–105(A), DR 6–101(A)(3), DR 7–101(A)(1)–(3) and DR 7–104(A)(2). The background of these charges shall be set forth in Part I.

4. As to the Complaint of Charles D. Smith, Petitioner sustained the charges of violations of DR 1–102(A)(5)–(6), DR 2–110(B)(2), DR 6–101(A)(3), DR 7–101(A)(1)–(3) and DR 9–102(B)(4). Charles D. Smith retained Singleton in February, 1985, in connection with the alleged wrongful termination of his employment from Conrail. Mr. Smith gave the respondent a copy of a transcript of an administrative hearing which had been held concerning the termination. The trial court found "the evidence clearly shows that Mr. Singleton failed to take any action whatsoever with respect to his client, failed to file suit, and failed to even return the transcript of testimony after having been suspended from the general practice of law."

5. Singleton violated rules DR 1–102(A)(3), (5)–(6), DR 6–101(A)(3), DR 7–101(A)(1)–(3), DR 9–102(B)(1), (3)–(4) in his representation of Christopher Kelly–El. The background of these charges shall be set forth in Part II.

Generally, these charges consist of a series of continuing violations of neglect, misconduct and failure to withdraw from employment.

Singleton filed no exceptions in regard to the trial judge's findings. The Commission has excepted only as to the findings in the Gaither and Kelly–El matters. We have carefully reviewed the record, and the accompanying exhibits. We find that there is clear and convincing evidence sufficient to sustain Judge Ward's findings as to the above violations, and limit our discussion to the Commission's exceptions. *See Attorney Grievance Commission v. Collins*, 295 Md. 532, 548, 457 A.2d 1134, 1142 (1983) (the findings of fact made by the hearing judge must be based on clear and convincing evidence).

I

█ In the complaint of Phyllis Gaither, the Commission alleged that Singleton represented Mr. Gaither in a divorce proceeding, by filing a complaint on January 30, 1985, and then later prepared an answer on behalf of Mrs. Gaither. Singleton allegedly accepted $180.00 for the preparation of this answer. The answer was prepared so as to appear that she was representing herself in the case. On May 5, 1986, the Circuit Court for Baltimore City dismissed the divorce action pursuant to Md.Rule 2-507. The Commission maintained that Singleton failed to withdraw from the case despite his indefinite suspension from the practice of law on January 30, 1986.

The Commission charged Singleton with violating DR 1-102, entitled "Misconduct," which provides:

(A) A lawyer shall not:

＊　　＊　　＊　　＊　　＊　　＊

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.[3]

Upon review of the above charges, the trial judge made the following factual findings:

The main evidence to sustain this charge indicates that the case was dismissed under Maryland Rule 2-507 on or about May 5, 1986. In fact, Mr. Singleton was suspended from the general practice of law on January 30, 1986, long before Rule 2-507 was executed. Rule 2-507 says that in the event that there have been no pleadings or other activities in a pending case for a period of more than one year, then the matter shall be dismissed by the clerk without further request under Rule 2-507. This is

---

3. The circuit court also found Singleton violated other disciplinary rules, as stated previously. Here, we list the specific "Misconduct" Rules for the purpose of discussing the Commission's exception.

what occurred on May 5, 1986. However, for Mr. Singleton to have taken any action with respect to this rule would have been in clear violation of DR 2–110.

As a result, the trial judge refused to sustain the charges with respect to DR 1–102(A)(5)–(6). The Commission argues that the judge erred in this finding.

The hearing judge's findings are prima facie correct and will not be disturbed unless they are clearly erroneous. *Attorney Grievance Commission v. Willcher,* 287 Md. 74, 77, 411 A.2d 83, 85 (1980); *Bar Association of Baltimore City v. Marshall,* 269 Md. 510, 516, 307 A.2d 677, 680 (1973). Here, the Commission has demonstrated that Respondent violated DR 1–102(A)(5)–(6), and that the trial judge's conclusion was in error. There was substantial evidence that Singleton neglected Mr. Gaither's divorce action prior to his suspension from the practice of law in January, 1986. Although Singleton maintains that he had not received attorney fees from Mr. Gaither, and that he accepted money from Mrs. Gaither only as payment of her husband's fee, this does not justify the fact that the case was inactive prior to Singleton's suspension. In addition, Singleton failed to advise Mr. Gaither that he had been suspended and that the client should obtain other counsel to handle the matter. As stated by the circuit court,

> Mr. Singleton's failure to competently handle an uncomplicated, uncontested divorce on behalf of his client, Mr. Gaither, has resulted in the mess that occurred. Not only did he fail to promptly prosecute the case on behalf of his client, but he failed to clarify his relationship with his client's wife, Mrs. Gaither, the defendant in that case.

We are satisfied that Singleton's representation of Mr. Gaither constitutes "conduct that is prejudicial to the administration of justice" and "that adversely reflects on his fitness to practice law." *See* DR 1–102(A)(5)–(6). Therefore, the Commission's exceptions as to the Gaither complaint are granted.

## II

■ In connection with the complaint of Christopher Kelly–El (Kelly–El), the Commission excepted to the circuit court's failure to find violations of DR 1–102(A)(3)–(4) and DR 9–102(A) with reference to the Respondent's alleged conversion to his own use of the funds of his client.[4] Kelly–El retained Singleton in September, 1981, in relation to a claim for injuries he sustained in a supermarket, Superpride Markets. Respondent allegedly falsely represented to Kelly–El that he had filed a case in court on his behalf. In addition, the Commission charged that Singleton settled the claim in November, 1985, without the client's authorization. After receiving an insurance settlement of $3,500.00, he failed to inform Kelly–El of the receipt of the settlement money.[5] Respondent allegedly misappropriated and converted to his own use the funds of his client. Finally, in August, 1986, Kelly–El was paid $2,165.87 by

---

**4.** DR 1–102 Misconduct, provides:
   (A) A lawyer shall not:
      (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
   DR 9–102 Preserving Identity of Funds and Property of a Client, provides:
      (A) All funds of clients paid to a lawyer or a law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
         (1) Funds reasonably sufficient to pay bank charges may be deposited therein.
         (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
   Because the circuit court sustained the charge relating to DR 1–102(A)(3), we shall only discuss the merits of the Commission's exceptions relating to DR 1–102(A)(4) and DR 9–102(A).

**5.** The check from Western World Insurance Company to Christopher C. Kelly and Singleton, Dashiell and Robinson, Esq., No. 13909, was dated November 25, 1985, later bank stamped on December 6, 1985 and was allegedly deposited in the firm's escrow account.

Singleton in connection with the claim against Superpride Markets.[6]

The trial judge made the following factual determinations:

Mr. Kelly–El was quite adamant that he had never received the first memorandum of settlement, and he was equally adamant under cross-examination from Mr. Singleton that he had never authorized the settlement in the first place. This Court finds that Mr. Kelly–El's testimony is more than persuasive. The testimony also clearly indicates that Mr. Singleton had little or no contact with his client during his entire period of representation, and he excuses his actions in this regard by claiming that Mr. Kelly–El didn't have a telephone or that his telephone was disconnected. Not only is this denied in part by Mr. Kelly–El, but it is clear that Mr. Singleton never made any real attempt to contact Mr. Kelly–El by mail or by personal contact, despite the fact that his client was still living at the same address throughout all these years. Again, the Court finds Mr. Kelly–El's testimony convincing.

The Commission's exception to the trial judge's refusal to find violations of DR 1–102(A)(4) and DR 9–102(A) is based solely on Singleton's failure to submit responses to the Commission's Request for Admissions.[7]  Specifically, re-

---

6. Kelly–El retained Samuel A. Tucker in July, 1986 to contact Singleton and to determine the status of his cases. The trial judge noted, "The complainant read in the paper that Mr. Singleton had been suspended from the practice of law, and as a result of that, he retained Sam Tucker, Esquire, as new counsel." Kelly–El acknowledged receipt of the check from Singleton on August 20, 1986.

7. Pursuant to Md.Rules 2–424 and BV10(a), the Commission filed a Request for Admission of Fact and Genuineness of Documents on August 7, 1987. Singleton argued that he was not able to respond to either the requests for admissions or the interrogatories because of health reasons. On October 2, 1987, Singleton suffered from encephalitis, glaucoma and heart and blood pressure problems. In fact the circuit court proceedings were continued until October 28, 1987, to allow Mr. Singleton more time to prepare his defense, and to com-

quest no. 40 stated, "You converted to your own use some or all of the settlement proceeds which belonged to Mr. Kelly–El without his permission or authorization." The Commission maintained that Respondent's failure to answer constitutes a conclusive admission pursuant to Md.Rule 2–424(b).[8] Because there was testimony concerning the deposit of the insurance settlement proceeds into an escrow account, the circuit court was unwilling to find misappropriation violations based on the failure to respond to request no. 40.

Upon consideration of the charges relating to misappropriation of Kelly–El's settlement money, the trial judge found:

> It is true that it is admitted that in his representation of Mr. Kelly–El, Mr. Singleton misappropriated and converted to his own use the funds of his client represented by the insurance company settlement. However, there is no

---

plete the requested discovery. Despite the postponement, Singleton never filed responses to either the requests for admissions or to the interrogatories.

8. Md.Rule 2–424(b) provides in pertinent part:

   (b). *Response.*—Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed files a response signed by the party or the party's attorney.

   Md.Rule 2–424(d) also provides in full:

   (d). *Effect of Admission.*—Any matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment. The court may permit withdrawal or amendment if the court finds that it would assist the presentation of the merits of the action and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits. Any admission made by a party under this Rule is for the purpose of the pending action only and is not an admission for any other purpose, nor may it be used against that party in any other proceeding.

   For purposes of this discussion, we shall assume that the trial judge permitted "withdrawal or amendment" by allowing testimony concerning the alleged misappropriation of Kelly–El's settlement money.

evidence to indicate what facts Bar Counsel is relying on for this conclusion. Mr. Singleton's own testimony, which seems to be borne out by the other facts of the case, is that the check was deposited in his firm's escrow account, where it stayed until distributed. There is no evidence that this money was misappropriated or used by Mr. Singleton for any other purpose. To presume this would be a guess. Therefore this charge is not sustained [referring to DR 1–102(A)(4) only].[9]

As to the contested charges relating to DR 9–102(A), the court noted:

This court is convinced from the testimony (which was contested) that Mr. Singleton testified truthfully that Mr. Kelly–El signed an agreement, an example copy of which was placed into evidence, that indicated that he promised to pay Mr. Singleton a fee of one-third of any gross amount collected and which further gave Mr. Singleton or his firm 'my power of attorney to execute any and all documents connected with the claim that I could properly execute.' Therefore, while it is clear that Mr. Singleton was not authorized to settle the matter and did so improperly, it is also equally clear that he apparently had the right to affix his client's signature to the negotiable instrument which was then placed in an escrow account awaiting distribution.

Under these circumstances, the trial judge's findings as to misappropriation of client's funds were not clearly erroneous. We agree that there was no evidence that Singleton converted the funds for his own use. Furthermore, there was evidence that the $3,500 settlement check was deposited in an "identifiable bank account." The trial judge was in

---

9. Despite this finding, the trial judge found that "there is more than ample evidence to sustain DR 1–102(A)(3), (5) and (6)." The court reasoned that Singleton settled the case without authorization, failed to keep in contact with his client, and failed to distribute the monies which he received until prompted by Mr. Tucker. Kelly–El was not notified that Singleton was no longer able to practice law as of January, 1986.

the best position to weigh the testimony concerning the deposit of the monies into the firm's escrow account. We find no basis for disturbing this finding. As to the charges of violations of DR 1–102(A)(4) and DR 9–102(A), the Commission's exceptions are denied.

## III

■ We have consistently reaffirmed the principle "that sanctions imposed in disciplinary proceedings against an attorney are not for the purpose of punishing the individual, but are intended as protection to the public." *Attorney Grievance Commission v. Kemp*, 303 Md. 664, 680, 496 A.2d 672, 680 (1985); *Attorney Grievance Commission v. Velasquez*, 301 Md. 450, 459, 483 A.2d 354, 359 (1984). The severity of the sanction generally depends upon the facts and circumstances of the case. *Attorney Grievance Commission v. Babbit*, 300 Md. 637, 642, 479 A.2d 1372, 1375 (1984). In determining the degree of discipline to be imposed, it is proper "not only to consider such circumstances as might mitigate or extenuate the offense, but also proper to consider the attorney's prior history of misconduct and any antecedent sanctions which may have been imposed." *Maryland State Bar Association, Inc. v. Phoebus*, 276 Md. 353, 362, 347 A.2d 556, 561 (1975); *see also Attorney Grievance Commission v. Marano*, 306 Md. 792, 799, 511 A.2d 512, 515 (1986) (the fact that counsel has not heeded prior admonitions is a serious factor to be taken into consideration in determining sanction); *Attorney Grievance Commission v. Haupt*, 306 Md. 612, 614, 510 A.2d 590, 591 (1986) (repeated serious neglect warrants disbarment); *Attorney Grievance Commission v. Howard*, 299 Md. 731, 737, 475 A.2d 466, 469 (1984); *Attorney Grievance Commission v. Heinze*, 293 Md. 193, 197, 442 A.2d 570, 572 (1982); *Attorney Grievance Commission v. Pollack*, 279 Md. 225, 238, 369 A.2d 61, 68 (1977).

In *Phoebus*, respondent was charged with five specific instances of "neglect of legal matter[s] entrusted to him," as violations of disciplinary rule 6–101(A)(3). Respondent

had previously been suspended on two prior occasions for similar misconduct. In mandating the sanction of disbarment, we reasoned that:

> The Respondent's utterly inexcusable and persistent neglect, manifested over a substantial period of time, when coupled with a consideration of the prior suspensions imposed upon him for the same or similar conduct, conclusively demonstrates that he lacks the required capacity to continue to practice law and establishes his unworthiness to hold himself out to the public as a practitioner in the profession.

276 Md. at 366, 347 A.2d at 563.

The Commission recommends disbarment as the proper sanction. This proceeding involves the third petition in this State resulting in findings of professional misconduct against Singleton. Under the circumstances of the present case, and upon careful review of the entire record, we find no alternative other than to impose the severe sanction of disbarment. Consistent with *Phoebus*, Singleton is guilty of gross and persistent neglect. The trial court's finding of 39 disciplinary violations involving five unrelated clients is clear evidence of such neglect, and is indicative of the cumulative nature of the violations. No mitigating or extenuating circumstance for Singleton's misconduct has been presented. The fact that Singleton may have been in poor health during the relevant time periods does not justify or mitigate the severity of the continuing violations. The trial record does not substantiate Singleton's claim that his misconduct was attributable to physical illness. No expert witnesses were produced. His failure to communicate with clients and notify them of his suspension is just one example of gross neglect.

There is ample indication that Singleton has utterly failed to heed the warnings of his two prior suspensions, and of an earlier private reprimand, and has continued to commit serious disciplinary violations. Such sanctions were obviously ineffective in undertaking to correct the seriousness of his prior proven neglect.

In fulfilling our obligation to protect the public, we conclude that disbarment is the appropriate sanction. Therefore, the name Herbert Louis Singleton, Jr. shall be stricken from the rolls of those entitled to practice law in this State.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE BV 15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST HERBERT LOUIS SINGLETON, JR.