929 A.2d 576

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Bonar Mayo ROBERTSON.

Misc. Docket (Subtitle AG) No. 21 Sept. Term, 2006.

Court of Appeals of Maryland.

Aug. 3, 2007.

620

Fletcher P. Thompson, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n of Maryland), for Petitioner.

Bonar Mayo Robertson, Glen Dale, MD, for Respondent.

Argued Before BELL, C.J., RAKER, CATHELL*, HARRELL, BATTAGLIA and GREENE, and ALAN M. WILNER (Retired, specially assigned), JJ.

* Cathell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Opinion by BELL, Chief Judge.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary or Remedial Action against Bonar Mayo Robertson, the respondent. The petition charged, as a result of a complaint by Bar Counsel, that the respondent violated Rules 1.1, Competence,[2] 1.3, Diligence,[3] 1.4, Communication,[4] 5.5, Unauthorized Practice of Law,[5] and 8.4, Misconduct,[6] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812.

---

1. Maryland Rule 16–751, as relevant, provides:

 "(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."
 *See also* Rule 16–743, which specifically provides, in the context of the Peer Review Committee recommendation, that "[t]he Commission may (1) approve the filing of a Petition for Disciplinary or Remedial Action."

2. Rule 1.1 imposes on lawyers the responsibility to "provide competent representation to a client, which the Rule defines as "requir[ing] the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

3. Rule 1.3 requires "[a] lawyer [to] act with reasonable diligence and promptness in representing a client."

4. Rule 1.4 provides:

 "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
 "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

5. Rule 5.5(a) prohibits a lawyer from "practic[ing] law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction."

6. Rule 8.4, as relevant, provides:

 "It is professional misconduct for a lawyer to:
 * * * *
 "(d) engage in conduct that is prejudicial to the administration of justice."
 * * * *

We referred the case, pursuant to Rules 16–752(a),[7] to the Honorable Toni E. Clarke, of the Circuit Court for Prince George's County, for hearing pursuant to Rule 16–757(c).[8] Following a hearing, at which the respondent appeared and participated, the hearing court found facts by the clear and convincing standard, as follows:

"Upon consideration of the evidence presented, including assessing the credibility of the witness, this Court finds, by clear and convincing evidence the facts as set forth herein.

"Defendant was admitted as a Member of the Bar of this Court on December 19, 1990. By Order of the Court of Appeals entered February 7, 2005, by consent, Respondent was suspended from the practice of law in the State of Maryland, effective May 1, 2005.

"In May 2002, Ms. Donna Belle–Trottman, (hereinafter 'Ms. Belle–Trottman' or the 'Client'), retained Respondent to represent her as personal representative of the estate of her deceased daughter in a wrongful death suit. On June 8, 2004, Respondent filed suit in the Circuit Court for Prince George's County against Spiniello Companies and the Washington Suburban Sanitary Commission. *Petitioner's Exhibits 2 and 3.*

---

7. Maryland Rule 16–752(a) provides:
 "(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

8. Maryland Rule 16–757(c) provides:
 "(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

"On February 7, 2005, Respondent was suspended from the practice of law by Order of the Maryland Court of Appeals. This was a 90–day suspension, to begin on May 1, 2005. *Petitioner's Exhibits 1 and 3.* Thereafter, sometime in the spring of 2005, before the effective date of suspension, Respondent and Ms. Belle–Trottman met in his office for her deposition. At that time, Respondent told Ms. Belle–Trottman that he was considering running for political office in Guyana and that, if he did so, William Jackson, Esquire, (hereinafter 'Mr. Jackson'), would handle her case. He told Ms. Belle–Trottman that he would let her know if he decided to do this. He did not tell her that he was to be suspended as of May 1, 2005. Respondent never advised Ms. Belle–Trottman that he was running for office or that he would be away in the summer of 2005. When Respondent's suspension took effect on May 1, 2005, Respondent was the only counsel of record in Ms. Belle–Trottman's wrongful death case in the Circuit Court for Prince George's County, Maryland.

"In conjunction with Respondent's Joint Petition to the Court of Appeals requesting a 90–day suspension, he signed an Affidavit stating that he would comply with Maryland Rule 16–760. Pursuant to Maryland Rule 16–760(c), Respondent had a duty to write Ms. Belle–Trottman a letter within fifteen days of the date of the Order, advising her of the Order suspending him from the practice of law and the fact that he would be unable to practice law after the effective date of that Order. The incontrovertible testimony of Respondent was that he did not completely read the Affidavit he signed, nor did he read Maryland Rule 16–760. *Petitioner's Exhibit 3 at 3, 10, 11, 52–53,* and *Exhibit 9.* Respondent did not at any time mail Ms. Belle–Trottman a letter advising her of his suspension, as required by Maryland Rule 16–760, nor did he know what that Rule required. Respondent did not withdraw as counsel of record as required by Maryland Rule 16–760(c)(5),[9]

---

**9.** The requirement that a respondent withdraw from a client matter is contained in Rule 16–760(c)(6). Subparagraph (c)(5) pertains to the

nor did he, at any time advise Ms. Belle–Trottman that Mr. Jackson, or any other attorney, would be representing her.

"Shortly after the suspension took effect, Respondent left the Washington, D.C. area. At that time, he believed that reinstatement would be automatic and that he would not have to file a Petition for reinstatement, as required by Maryland Rule 16–781. Respondent has never filed a Petition for reinstatement.

"On or about June 6, 2005, Defendants Spiniello Companies and Washington Suburban Sanitary Commission filed a Motion for Summary Judgment in Ms. Belle–Trottman's wrongful death case. Shortly after the filing of this motion, Mr. Jackson, and a paralegal in that office, told Respondent that a Motion for Summary Judgment had been filed. *Petitioner's Exhibit 3 [at] 15.* Respondent asked if his name was still on the case and said that if it was, he had to take care of it. *Petitioner's Exhibit 3 [at] 14–15.* Respondent did not advise Ms. Belle–Trottman of the filing of the Motion for Summary Judgment, or cause anyone to advise her of the filing. *Petitioner's Exhibit 3 [at] 15.* Respondent did not file a Motion to Withdraw as counsel after learning of the Motion for Summary Judgment. *Petitioner's Exhibit 3 [at] 15.* Respondent's uncontested testimony was that he believed he would be automatically reinstated before the hearing on the Motion for Summary Judgment and would be able to file a response to it. *Petitioner's Exhibit 3 [at] 19–21.* No one filed a response to the Motion for Summary Judgment within the time required by Maryland Rule 2–311(b).

"In July 2005, Respondent received a call from the Attorney who represented him in the suspension case, Thomas Witkop, Esquire, (hereinafter 'Mr. Witkop'), advising Respondent that additional steps needed to be taken to comply with the Court's suspension Order, before Respondent could be reinstated. When Respondent received this message, he was out of the

responsibility of the lawyer to notify the client of the suspension within 15 days of the suspension order.

country and advised Mr. Witkop that he would take care of these matters when he returned. Towards the end of July or the beginning of August 2005, Respondent realized that his reinstatement to the practice of law would not automatically occur after the expiration of the 90-day suspension.

"Respondent continued to remain of record in M s. Belle-Trottman's case; she did not learn of the hearing on the Motion for Summary Judgment through Respondent, or any other attorney. Ms. Belle-Trottman testified that Respondent never advised her of his suspension and that he had to withdraw from her case, nor did he advise her of the pending Motion for Summary Judgment.

"In September 2005, Respondent, with the assistance of a law clerk, prepared a response to the Motion for Summary Judgment in Ms. Belle-Trottman's case. The response to the motion carried a signature line for Respondent and no signature line for any other attorney. *Petitioner's Exhibits 3 & 5.* Respondent gave Mr. Jackson the response to the Motion for Summary Judgment right before the hearing on the Motion. *Petitioner's Exhibit 3 [at] 24.* On September 21, 2005, Mr. Jackson appeared on behalf of Ms. Belle-Trottman and filed a Line substituting his appearance as counsel for Respondent's appearance. On the same date, he filed the response to the Motion for Summary Judgment. *Petitioner's Exhibit 2.* After a hearing on the Motion, judgment was entered against Ms. Belle-Trottman. Petitioner's Exhibit 2. Respondent never advised her that the judgment had been entered against her. No one advised Ms. Belle-Trottman that Mr. Jackson was going to enter his appearance for her and oppose the Motion for Summary Judgment on her behalf."

From these facts, the hearing court drew conclusions of law, deciding that the respondent, as charged, violated Rules 1.1, 1.3, 1.4, 5.5(a) and 8.4(d).

As to the respondent's competence, the hearing court concluded:

"Respondent violated MRPC 1.1 by remaining of record in Ms. Belle-Trottman's case when his license to practice law

was suspended, and by failing to advise her that he had been suspended. As a result of these failures, Respondent's client was unaware that she was without representation for a period of more than four months, during which time a motion for Summary Judgment was filed and, granted, against."

Referencing the obligations of a lawyer who has been suspended from the practice, set out in Rule 16-760(c) and noting specifically that the respondent failed to comply with subparagraph (c)(5), requiring that he notify his client of the suspension within 15 days of the order and subparagraph (c)(6), requiring his withdrawal from client matters within 30 days, and did so intentionally, after having been advised, by his counsel, of that unfulfilled obligation, the hearing court reasoned that the respondent's default was "a complete lack of thoroughness and legal knowledge"—"[h]ad Respondent exercised any thoroughness, he would have read the affidavit and the Rule governing his duties upon suspension."

The hearing court made a similar conclusion with regard to the respondent's failure to withdraw as counsel in the Belle-Trottman case. Rejecting the explanation that it was an oversight and noting the respondent's deposition testimony that he told his paralegal of the need to withdraw from the case and his testimony at the discipline proceedings that "he did not want to advise [his client] that he had been suspended, figuring that nothing would happen in her case until after the 90 days, when he would just pickup where he left off in representing her," it also viewed the failure to withdraw as a lack of thoroughness and legal knowledge. Of further concern to the hearing court was the effect on the client of the respondent's failures to inform and to withdraw—"the client was left without representation from May 1, 2005 to September 21, 2005, and did not know it." Relying on *Attorney Grievance Comm'n v. Harris,* 366 Md. 376, 388, 784 A.2d 516, 523 (2001), in which the Court sustained the petitioner's exception to a finding that the failure of the respondent, experienced in the kind of case at issue, to appear in court did not violate Rule 1.1, *Attorney Grievance Comm'n v. Mooney,*

359 Md. 56, 74, 753 A.2d 17, 26 (2000), stating that "a complete failure of representation is the ultimate incompetency," and *Attorney Grievance Comm'n v. Granger,* 374 Md. 438, 462, 823 A. 2d 611, 625 (2003), holding that failure to file a bankruptcy petition, for which the lawyer was retained and qualified, was a violation of Rule 1.1, it concluded that this was "an additional reason for which Respondent is in violation of MRPC 1.1."

These factors formed the basis for the hearing court's conclusions with regard to the respondent's diligence, Rule 1.3, and his duty to "keep a client reasonably informed about a matter," Rule 1.4(a). The respondent's failure to withdraw from his representation of his client was also a factor in the hearing court's determination that the respondent practiced law unauthorizedly. The other was the finding that the respondent prepared, while suspended, the opposition to the motion for summary judgment filed in the Belle–Trottman case, for which proposition the hearing court cited *Attorney Grievance Comm'n v. Awuah,* 374 Md. 505, 523, 823 A.2d 651, 662 (2003).

With regard to the Rule 8.4(d) violation, the hearing court observed:

"Respondent violated this MRPC when he remained of record after he was required to withdraw, and failed to fulfill his duty to advise his client of his suspension. As a result of these failures, the client was left without representation during a time when an answer to a Motion for Summary Judgment should have been filed in her case, and was unaware of the fact that no one was protecting her legal rights. This is conduct prejudicial to the administration of justice. *Attorney Grievance Comm'n v. Singleton,* 315 Md. 1[, 6, 553 A.2d 222, 224] (1989) (failure to notify client of suspension is conduct prejudicial to the administration of justice). In addition, the Court of Appeals has held that an attorney who continues to practice while suspended in violation of MRPC 5.5, as Respondent did in this case, also violates MRPC 8.4(d)." *Attorney Grievance Comm'n v. Awuah,* 374 Md. 505[, 523, 823 A.2d 651, 662] (2003).

The petitioner did not take any exceptions to the findings and conclusions. It did, however, file Petitioner's Recommendation For Sanction, in which it urges this Court to suspend the respondent indefinitely.

The respondent filed seven (7) exceptions, challenging, in addition to each of the violations found, the hearing court's denial of his motion in limine and its "finding that a violation of Maryland Rule 16–760 is a violation of [the] Maryland Rules of Professional Conduct." We will address each of them, in turn, after we have reviewed our "exception" practice.

■■■ We review de novo the conclusions of law drawn by the hearing court. Rule 16–759(b)(1).[10] See *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 27–28, 922 A.2d 554, 569–70 (2007); *Attorney Grievance Comm'n v. Mahone*, 398 Md. 257, 265–66, 920 A.2d 458, 463 (2007); *Attorney Grievance Comm'n v. Mba–Jonas*, 397 Md. 690, 700, 919 A.2d 669, 675 (2007); *Attorney Grievance Comm'n v. Hodgson*, 396 Md. 1, 6–7, 912 A.2d 640, 644 (2006); *Attorney Grievance Comm'n v. McLaughlin*, 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002); *Attorney Grievance Comm'n v. Joehl*, 335 Md. 83, 88, 642 A.2d 194, 196 (1994) (noting that the ultimate decision as to whether an attorney has engaged in professional misconduct rests with this Court). When the factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled. *Mba–Jonas*, 397 Md. at 700, 919 A.2d at 675;

---

**10.** Maryland Rule 16–759(b) provides:

"(1) *Conclusions of Law.* The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

"(2) *Findings of Fact.*

"(A) *If No Exceptions Are Filed.* If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

"(B) *If Exceptions are filed.* If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."

*Attorney Grievance Comm'n v. Manger*, 396 Md. 134, 146–47, 913 A.2d 1, 8 (2006). Moreover, a hearing court's findings of fact will not be overruled unless we determine that they are clearly erroneous. *Mahone*, 398 Md. at 265, 920 A.2d at 463; *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). "Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder." *State v. Stanley*, 351 Md. 733, 750, 720 A.2d 323, 331 (1998).

■ Maryland Rule 2–424 permits a party to seek admissions from the opposing party. Subsection (a).[11] When a party does so, "[e]ach matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed serves a response signed by the party or the party's attorney." Subsection (b).[12] Unless a party admitting a fact is permitted

---

11. That subsection provides:

"(a) *Request for Admission.* A party may serve one or more written requests to any other party for the admission of (1) the genuineness of any relevant documents described in or exhibited with the request, or (2) the truth of any relevant matters of fact set forth in the request. Copies of documents shall be served with the request unless they have been or are otherwise furnished or made available for inspection and copying. Each matter of which an admission is requested shall be separately set forth."

12. Maryland Rule 2–424(b) provides:

"(b) *Response.* Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed serves a response signed by the party or the party's attorney. As to each matter of which an admission is requested, the response shall set forth each request for admission and shall specify an objection, or shall admit or deny the matter, or shall set forth in detail the reason why the respondent cannot truthfully admit or deny it. The reasons for any objection shall be stated. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and deny or qualify the remainder. A

by the court to withdraw or amend the admission, "[a]ny matter admitted under this Rule is conclusively established." Subsection (d).[13] On motion, the court may permit withdrawal or amendment, if it "finds that it would assist the presentation of the merits of the action and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits." *Id.*

The respondent served on the petitioner requests for admissions on September 22, 2006. Among the admissions sought was the truth of the respondent's testimony concerning what he told the complainant about his being away from his practice and whether he introduced her to counsel who would be handling her case. That testimony contradicted the complainant's testimony, which was that the respondent did not advise her that a lawyer other than himself would be handling her case or introduce her to that lawyer. When, on November 14, 2006, more than thirty days later, he had not received a response affirmatively making the admissions or denying the requests, the respondent wrote the petitioner, advising it that he was "taking the request to be admitted." That prompted

---

respondent may not give lack of information or knowledge as a reason for failure to admit or deny unless the respondent states that after reasonable inquiry the information known or readily obtainable by the respondent is insufficient to enable the respondent to admit or deny. A party who considers that a matter of which an admission is requested presents a genuine issue for trial may not, on that ground alone, object to the request but the party may, subject to the provisions of section (e) of this Rule, deny the matter or set forth reasons for not being able to admit or deny it."

**13.** Maryland Rule 2–424(d) provides:

"(d) *Effect of Admission.* Any matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment. The court may permit withdrawal or amendment if the court finds that it would assist the presentation of the merits of the action and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits. Any admission made by a party under this Rule is for the purpose of the pending action only and is not an admission for any other purpose, nor may it be used against that party in any other proceeding."

the petitioner to mail Petitioner's Answer to Respondent's Request for Admission to the respondent, which was done on November 16, 2006. The answer was delivered on Saturday, November 18, 2006, and the respondent, having been out of the country, received it on Monday, November 20, 2006. Whether taking the Saturday or the Monday delivery date as dispositive, at most, there was one business day between delivery and the November 21, 2006 hearing date.

On the morning of the hearing, the respondent moved *in limine* to have the hearing court enforce Rule 2–424 and disallow any testimony by the petitioner's witnesses that would be inconsistent with the request for admissions, thus giving effect to the provisions of subsection (b) requiring timely response to requests for admissions. Specifically, he asked the hearing court "to preclude the petitioner from adducing any evidence that would tend to contradict the Request for Admissions that were served on the petitioner." Arguing that Rule 2–424 is clear and mandatory and does not require a showing of prejudice,[14] although the respondent proffered that, given the lateness of his receipt of the petitioner's answer, prejudice, in the form of his inability adequately to respond to the denial and generally to prepare his case, did, in fact, result,[15] the respondent relied on *Attorney Grievance*

---

**14.** This argument is simply wrong. As we have seen, Rule 2–424(d) permits the court to allow withdrawal or amendment of admissions. A factor in the decision to permit withdrawal or amendment is whether "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits."

**15.** The respondent explained:
"[T]here are statements that were provided and that is why the Request for Admissions [was] critical, because my contention is that the statements were not complete. If I had gotten a response within 30 days, which would have been the 22nd of October, I would have been in a position to depose both the investigator and Ms. Trottman, if I thought it necessary.

\* \* \* \*

"If they were to admit the investigative report, my contention was it was incomplete.

*Comm'n v. Kapoor,* 391 Md. 505, 530, 894 A.2d 502, 517 (2006), a case handled by the same counsel for the petitioner as in this case and in which this Court, citing Rule 2–424, observed: "[b]ecause Respondent did not respond to Petitioner's Request for Admission of Facts and Genuineness of Documents, each matter of which an admission was requested was deemed admitted and conclusively established as a matter of law."

The petitioner did not deny that its answer to the request for admissions was late; indeed, it confirmed the timing of the mailing, as proffered by the respondent. Rather, the petitioner asked the court to "permit me, in accordance with the rule, to amend the answer and permit the filing of the late request." [16] In support, it argued that the admissions pertained to witness reports, "about which Mr. Robertson has had reports for a substantial period of time" and that, with regard to the complainant, she would testify under oath as to what she told the petitioner's investigator, and, in any event, "Mr. Robertson is aware, generally, through [a report he received] what [the complainant's] testimony is going to be because she was his client. So he's had a chance to depose her and he

---

"With respect to the statement taken from me, my position was that it was inaccurate. This was an opportunity, economically, for me to correct that mistake. Our Honor, depositions cost money. And, frankly, I was trying to conserve. If I had to do it, I had to do it. But if I could achieve the same goal in a less expensive way, I attempted to do that. And, Your Honor, I think I was entitled to exercise judgment at that time that was not going to be an issue, that the reports of the investigator were going to be changed to reflect the admissions, so it would not have been an issue. There was n o need for me to take two depositions."

**16.** The respondent challenged the propriety of the court allowing the withdrawal or amendment of an admission when the request to do so comes after the time for response has passed and, therefore, after the admission has been made by default. He reasoned: "the alteration that counsel refers to in [Rule] 2–424 contemplates a response. If a response is forthcoming within the 30 days, then under certain circumstances the Court may allow the responder to alter or amend. It is not meant to be a substitute for responding within the 30 days." The plain language of the Rule belies the respondent's argument. Subsection (d) does not differentiate between admissions by default and admissions by response. It simply gives the court the authority to excuse admissions under the enumerated circumstances.

knows who she is." The petitioner denied that there was prejudice, asserting:

"I think it would be appropriate if Mr. Robertson could produce some witness if he believes that these matters were uncontested. He makes no such showing. He's here. He's the only one witness that he was ever going to call, and he can certainly contradict, to the extent that he has personal knowledge, what Ms. Trottman has to say."

The hearing court denied the motion in limine. It did so, with regard to some of the requests, because they sought admissions as to the ultimate issue. It also noted that "quite a few [of the requests] were admitted anyway, so I think the argument is moot as to those." With regard to the requests that were left, requests that the hearing court characterized as involving "what the investigator was or was not told or did or did not see or did not do," the hearing court ruled:

"All right. Well, I've considered the arguments. I've looked briefly at the rule. I've looked at the rule, and I've looked, briefly, at some of the annotations. I am presuming that, as counsel said, you got this from the reports that were generated as a result of counsel's investigation. A t counsel's direction, the investigator went out and investigated the matter and generated a report. So, based on all of that, I am going to deny your motion in limine to the extent that any testimony would be inconsistent. I don't even know that that's going to be an issue, but I am going to deny your motion and file the written motion in the file."

The respondent has taken an exception to this ruling. He argues that he was entitled to a favorable ruling as a matter of law, given the wording of the Rule and the circumstances surrounding the petitioner's non-compliance with it. This is especially the case, he continues, when the effect of the ruling was to admit evidence critical to the petitioner's case—that the respondent did not advise the complainant of his being away from his practice or introduce her to the counsel that he had obtained to handle her case—evidence that contradicted the admissions that the petitioner made by not timely responding

to the respondent's requests for admissions, which was then accepted by the hearing court.

█ We shall sustain the respondent's exception. At the outset, we reject the respondent's argument that withdrawal and/or amendment of an admission is permitted only if the responder has filed a response, in which he or she has made the admission. To be sure one may make an admission by timely filing a response to the request; however, by its terms, *see Rule* 2–424(b), that same result occurs by default whenever the request for admissions is not timely responded to. The Rule does not, certainly not by its terms, endorse withdrawal or amendment in the case of the former, but not in the case of the latter. It simply does not differentiate between them, providing only that, if the court makes certain determinations, it may permit withdrawal or amendment. The required determinations are, as we have seen, that allowing withdrawal or amendment "would assist the presentation of the merits of the action and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits." Neither of these determinations factored into the hearing court's decision to deny the respondent's motion in limine. It was the fact that "the reports ... were generated as a result of counsel's investigation" and that the respondent obtained the information he intended to contradict by asking the petitioner to admit th e opposite or the converse.

Whatever the source of the information, on the basis of which the respondent sought to seek admissions, an admission already made will be excused, pursuant to Rule 2–424(d) only if to do so would assist the presentation of the merits of the case, while not prejudicing the party in whose favor the admissions were made. In this case, the denial of the motion in limine has relevance to the Rule 1.4 Rule violation, for, in the words of the respondent, "the Petitioner's witness's version of events anchored the Court's finding" in that regard and Rule 5.5(a), by strengthening the basis for the court's finding of a violation of that Rule. The effect of our decision to sustain

this exception is to reverse the conclusion of the hearing court as to the Rule 1.4 violation. Whether the strengthening of the Rule 5.5 violation rationale should have the same result must await our consideration of the exception raised as to it.

■ The respondent's next exception relates to the hearing court's focus and reliance on his failure to comply with Rule 16–760(c), pertaining to a suspended lawyer's obligation to his or her clients and the public at large, one of which, subparagraph (6), is "[w]ithin 30 days after the date of the order, [to] withdraw from all client matters, when determining whether the respondent violated each of the charged Rules violations." Indeed, that required duty was implicated and formed the basis for the hearing court's findings and conclusions with respect to each of those violations. The respondent urges that "a finding of a Rule 16–760(c) violation does not a violation of the Maryland Rules of Professional Conduct (MRPC) make." That, however, is what has occurred in this case, he submits. Noting that the Rule prescribes the sanctions for its violation, one of which is the filing of a Petition for Disciplinary or Remedial Action, Rule 16–760(m)(2),[17] he argues that, although

---

17. Maryland Rule 16–760(m), in its entirety, provides:
 "(m) Sanctions for Violations.
 "(1) *Ineligibility for Reinstatement.* A petition for reinstatement filed pursuant to Rule 16–781 may be dismissed if the respondent fails to demonstrate (A) substantial compliance with sections (c) and (d) of this Rule and the order of the Court of Appeals, or (B) good cause for noncompliance.
 "(2) *Disciplinary or Remedial Action.* Upon receiving information from any source that a respondent has violated sections (c) or (d) of this Rule or the order of the Court of Appeals, and in addition to any other remedy, Bar Counsel may file a Petition for Disciplinary or Remedial Action pursuant to Rule 16–751 based upon the violation.
 "(3) *Injunction Against Unauthorized Practice.* Upon receiving information from any source indicating that a respondent is violating section (d) of this Rule, Bar Counsel shall investigate the matter and may institute or intervene in an action in any court to enjoin the respondent from further violations.
 "(4) *Contempt.* If a respondent violates section (c) or (d) of this Rule or the order of the Court of Appeals, the Commission may request the initiation of a proceeding for constructive criminal contempt in accordance with the provisions of Rule 15–205 and

the petitioner elected that option, it really charged him with "failure to withdraw from the Belle–Trottman matter."

We are not persuaded and, so, overrule the exception. As it was permitted to do, the petitioner charged the respondent "based upon the violation." Rule 16–760(m)(2). To be sure, failure to withdraw is a violation of Rule 16–760(c)(6), which could have been charged expressly, that conduct implicates other Rules of Professional Conduct, namely those charged in the case *sub judice.* That the petitioner chose to support its allegation of Rule violations other than Rule 16–760(c)(6) with the conduct constituting that violation is not a basis for not considering those charges.

■ As we have seen, the hearing court determined that the respondent's failure to withdraw from the complainant's matter was "a complete lack of thoroughness and legal knowledge," reasoning that, "[h]ad Respondent exercised any thoroughness, he would have read the affidavit and the Rule governing his duties upon suspension." Maintaining that the focus of the hearing court was misplaced, being on what the respondent did after his suspension, rather than on "inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures," and on whether the respondent adequately prepared to handle the case. Comment, MRPC 1.1. He argues, moreover, that

"Cases in which this court has found MRPC Rule 1.1 competency violations generally involve the attorney's failure to adequately investigate issues and motions pertinent to the client's case or other conduct that has a detrimental effect on the client's case, or on the client's position afterwards."

The respondent relies on *Awuah,* 374 Md. at 522, 823 A.2d at 661 (failure to file the requisite appeal and/or motion to reconsider within the time period and inadequate counseling of client to consent to deportation); *Attorney Grievance Comm'n*

may initiate a proceeding for constructive civil contempt in accordance with the provisions of Rule 15–206."

*v. Zdravkovich,* 362 Md. 1, 22, 762 A.2d 950, 961 (2000) (failure to research removal issue).

A lawyer suspended from the practice of law is charged, to be sure, with reading all necessary documents to understand his or her obligations and responsibilities before and after the suspension so as to be able to discharge them timely and appropriately. The failure to discharge that responsibility, while certainly not commendable and indicating a lack of diligence, perhaps competence, in that regard, does not establish a lack of competence to handle a particular matter, that the lawyer does not possess or has not provided representation characterized by "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rule 1.1. Whether a lawyer has employed the requisite knowledge and skill in a particular matter is determined by considering "relevant factors including the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question." Comment, Rule 1.1. While the failure to withdraw from a client matter, as required, and to inform the client that the lawyer has been suspended is a violation of some of the Rules of Professional Conduct, it simply does not address, and is not dispositive of, a lawyer's competence to handle a particular matter. We sustain the respondent's exception.

 As with the competency violation, the hearing court premised the violation of Rule 1.3 on the respondent's failure to withdraw from the complainant's matter prior to the effective date of his suspension, thus remaining of record, after his suspension and as of the filing of the motion for summary judgment.

The respondent rejects the hearing court's rationale for finding a lack of diligence violation. In addition to denying that the petitioner presented any evidence to support the charge, he argues:

"The circumstances which spawned Petitioner's complaint was the Respondent's omission to file a line of withdrawal in a matter for which he remained the attorney of record even

after the effective date of his suspension. The only evidence presented by the Petitioner to prove lack of diligence involved conduct that occurred after the effective date of suspension. As of the effective date of suspension, Respondent could not comply with Md. Rule 1.3 since Respondent's suspension severed the ability of Respondent to stand in a representative capacity relative to all clients."

We agree. Although, by his non-compliance with Rule 16–760(c), the respondent remained counsel of record after the effective date of his suspension from the practice of law, he could not, by virtue of that suspension have represented the complainant; to do so, as we shall see, would have been unauthorized practice of law. The hearing court concluded that, on the basis of inaction and omissions occurring when he was entitled to practice, but which were designed to terminate the client relationship, the respondent failed reasonably, diligently and promptly to represent his client and the petitioner would have us sustain that conclusion. We are not persuaded that an omission to inform that would terminate representation can support a Rule 1.3 violation, the gravamen of which is representation or that conduct occurring after representation has ceased can qualify as representation. We sustain this exception.

We addressed the respondent's Rule 1.4(a) violation when we considered his exception to the denial of his motion in limine. We sustained that exception and the related Rule 1.4 exception.

■ The respondent's Rule 5.5(a) exception proceeds on the basis that the facts on which the hearing court relied to conclude that there was a violation of that Rule did not support the conclusion. The short answer is that they most certainly do. Indeed, in reciting the facts found by the hearing court, the respondent omits the most important one, that "Respondent, with the assistance of a law clerk, prepared a response to the Motion for Summary Judgment in Ms. Belle–Trottman's case. The response to the motion carried a signature line for Respondent and no signature line for any

other attorney." The preparation of a response to a motion for summary judgment, when suspended from the practice of law, is unauthorized practice of law. *Awuah*, 374 Md. at 523, 823 A.2d at 662. The respondent concedes the point, but submits that "this Court has not sanctioned such action when it is done under the supervision of a licensed attorney." (footnote omitted). He also contends that, because his signature was not affixed to the signature line of the response, there was no evidence that he continued to represent clients after his suspension. With regard to the supervision argument, the hearing court found just the opposite, that he and a paralegal prepared the response; it did not find that they did so under the supervision of a licensed attorney. Similarly, the hearing court's findings control as to the significance of the unsigned pleading. The respondent's exception is overruled.

■■■ The respondent's final exception is to the hearing court's conclusion that the respondent engaged in conduct prejudicial to the administration of justice. His argument is that the failure to withdraw from the complainant's matter and inform the complainant of the fact that he was suspended is not such conduct. We do not agree.

■■■ "[C]onduct [that] reflects negatively on the legal profession and sets a bad example for the public at large" is prejudicial to the administration of justice. *Goff*, 399 Md. at 22, 922 A.2d at 566, quoting the hearing court in that case. The phrase, "conduct prejudicial to the administration of justice," was considered in *Rheb v. Bar Ass'n of Baltimore City*, 186 Md. 200, 203, 46 A.2d 289, 291 (1946). This Court made clear in that case that " 'conduct prejudicial to the administration of justice,' delegates or confirms to the courts the power and duty to consider particular conduct of one who is an officer of the court, in relation to the privileges and duties of a public calling that specially invites complete trust and confidence," *id.* at 205, 46 A.2d at 291; *see Attorney Grievance Comm'n of Maryland v. Post*, 350 Md. 85, 100, 710 A.2d 935, 942 (1998), and that it should not be given "restricted meaning." *Rheb*, 186 Md. at 205, 46 A.2d at 291. Thus,

"[i]n the last analysis the duty rests upon the courts, and the profession as a whole, to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practitioner." *Id.* In short, "[b]ehavior that may seriously impair public confidence in the entire profession, without extenuating circumstances, may be conduct prejudicial to the administration of justice." *Attorney Grievance Comm'n v. Reinhardt,* 391 Md. 209, 222, 892 A.2d 533, 540 (2006). *See Mba–Jonas,* 397 Md. at 701, 919 A.2d at 676.

When one is suspended from the practice of law and fails to discharge the responsibilities imposed on him or her by the Rules, which include informing the client and withdrawal from all client representation matters, he or she engages in conduct prejudicial to the administration of justice. That conduct could, and most likely would, "impair public confidence in the entire profession." *Reinhardt,* 391 Md. at 222, 892 A.2d at 540. We overrule this exception.

 This leaves for resolution the sanction to be imposed. The petitioner recommends an indefinite suspension. It reasons:

"[T]he evidence is that after he agreed to a suspension, respondent displayed no interest in the effects of the suspension and continued to remain of record in Ms. Donna Belle–Trottman's law suit knowing that he could not represent her. His conduct shows that he is not yet ready to return to the practice of law.

... At no point has [the respondent] taken any steps to apply for reinstatement after the ninety-day suspension, even after he was advised by his counsel that he needed to take additional steps to gain readmission in July 2005. Instead of attempting to bring himself into compliance, he took no action and remained of record in Ms. Belle–Trottman's case knowing that he was suspended. In addition to the suspension imposed in 2005, respondent received a reprimand on December 7, 2004 from the Court of Appeals for violations of rule 1.4, 1.5 and 8.4(d).

*Attorney Grievance Commission v. Robertson,* 384 Md. 154[, 862 A.2d 991] (2004)."

 The respondent concedes that an intentional failure to withdraw from the complainant's matter is sanctionable. He recommends, nevertheless, noting the purpose of attorney discipline-to protect the unsuspecting public, not to punish the erring attorney,—that his case should be remanded to Bar Counsel "to allow consideration of a disposition under Md. Rule 16–736 (Diversion)." Alternatively, relying on *Attorney Grievance Comm'n v. Singleton,* 315 Md. 1, 553 A.2d 222 (1989), he recommends that he be required to repeat the original period of suspension.

The respondent correctly states the goal of attorney discipline. *See Goff,* 399 Md. at 30–31, 922 A.2d at 571; *Mba–Jonas,* 397 Md. at 703, 919 A.2d at 677; *Attorney Grievance Comm'n v. Rees,* 396 Md. 248, 254, 913 A.2d 68, 72 (2006). We have made it quite clear, however, that critical to the goal is the protection of the public's confidence in the legal profession. *Attorney Grievance Comm'n v. Christopher,* 383 Md. 624, 639, 861 A.2d 692, 701 (2004). We recently addressed how the goal is achieved:

"Protecting the integrity of the legal profession and "deter[ing] other lawyers from engaging in violations of the Rules of Professional Conduct," are also reasons for sanctioning attorneys who violate the rules. *Attorney Griev. Comm'n v. Cassidy,* 362 Md. 689, 698, 766 A.2d 632, 637 (2001). "Determining the appropriate sanction requires the Court to consider the facts and circumstances of each particular case, including consideration of any mitigating factors." *Attorney Griev. Comm'n v. Post,* 379 Md. 60, 71, 839 A.2d 718, 724 (2003). In addition, " 'the nature and gravity of the violations and the intent with which they were committed' " are relevant considerations. *Id.* (quoting *Attorney Griev. Comm'n of Maryland v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997)). We also have considered "the attorney's prior grievance history ... the attorney's remorse for the misconduct, and the likelihood of the con-

duct being repeated." *Post,* 379 Md. at 71, 839 A.2d at 724–725 (citations omitted). As stated in *Attorney Griev. Comm'n v. Monfried,* 368 Md. 373, 794 A.2d 92 (2002), to determine an appropriate sanction we will,

> "examine the nature of the misconduct, the lawyer's state of mind which underlies the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the respondent to continue in practice, and any mitigating or aggravating factors."

> "*Monfried,* 368 Md. at 396, 794 A.2d at 105."

*Attorney Grievance Comm'n of Maryland v. Kreamer,* 387 Md. 503, 534, 876 A.2d 79, 97–98 (2005).

Applying these factors, we believe that the petitioner's recommended sanction is the more appropriate sanction. Accordingly, we shall order the respondent indefinitely suspended from the practice of law.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST BONAR MAYO ROBERTSON.

HARRELL, J., concurs in result and files opinion.

Concurring Opinion by HARRELL, Judge.

I concur in the Majority opinion's reasoning and result, except as to sustaining Respondent's exception to the hearing court's disposition of his motion in limine. Maj. op. at 631–36, 929 A.2d at 584–87. Consequently, I also disagree with the ripple effect that the Majority opinion sees as flowing from sustaining this exception, i.e., sustaining Respondent's exception to the finding of a violation of MRPC 1.4(a). Maj. op. at 639, 929 A.2d at 589.

The Majority opinion spies merit in Respondent's exception to the denial of his motion in limine seeking to restrict Bar

Counsel from adducing testimony or other evidence of the Complainant's claim that Respondent failed to advise her that another attorney would be handling her case or to introduce her to the other attorney. The basis for the motion in limine was Bar Counsel's tardy denial of one of Respondent's Requests for Admissions claiming to the contrary of Complainant's assertion. The hearing judge granted relief to Bar Counsel and allowed the conflicting evidence of Complainant on this score. The Majority opinion finds fault with the hearing judge's exercise of discretion under Md. Rule 2–424(d) because the hearing judge, in her oral ruling, did not address in so many words that she considered whether allowing withdrawal of the default admission "would assist the presentation of the merits of the action" and whether prejudice would accrue to Respondent "in maintaining the ... defense on the merits" if relief from the default admission were granted. Maj. op. at 635, 929 A.2d at 586.

While it may be said, in the abstract and in certain circumstances, that Justice is blind, my vision has been corrected to 20–20 for a long time. To me, it is clearly implicit in the hearing judge's remarks that she considered both factors that the Majority opinion perceives as lacking. First, it is patent that the potential for prejudice was argued to her. *Compare* Maj. op at 632–33, n. 15, 929 A.2d at 584–85, n. 15 with op. at 634–35, 929 A.2d at 585–86. From the competing presentations, it is abundantly clear that Respondent offered no specific indicia of how he would be prejudiced, choosing instead to mouth only generalities and conclusory arguments. Not once did Respondent argue the unavailability, because of Bar Counsel's late response, of a specific and refutatory item of physical evidence or a specific witness who would corroborate his version of what transpired between himself and Ms. Belle–Trottman on whatever day in the Spring of 2005 the pertinent meeting in Respondent's office occurred, at which her deposition in the wrongful death case was to be taken. To the contrary, Bar Counsel argued essentially the situation was a "he said, she said" one where only Respondent and Complainant were present. The only surprise to Respondent in the

hearing judge's ruling should have been that he was going to have to put his veracity to the test instead of enjoy the "walk-over" that he anticipated.

Implicit in the hearing judge's verbal explanation for denying Respondent's motion in limine is consideration of both assistance in presenting the merits of the allegations and whether Respondent would be prejudiced in a cognizable way that the law might recognize as unfair. She spoke to Respondent's awareness of what the Complainant contended occurred in her statements to Bar Counsel's investigator, a copy of which Respondent received before the tardy response to the Request for Admissions (putting aside the fact that Respondent was present on that fine Spring 2005 day when the relevant interaction with his client occurred). It was just as obvious to the hearing judge, as it apparently is to this Court, that the contradictory versions of that encounter were critical to the determination of some of the alleged MRPC violations; hence, the evidence sought to be excluded would be of assistance in resolving the merits. Moreover, because Respondent could not muster any specific replies to Bar Counsel's argument that he would suffer no prejudice to the preparation of his defense because he was his only witness on this matter, the hearing judge was entirely within the proper range of her discretion to deny the motion in limine.

In accord with my view of the propriety of the hearing judge's ruling (and the resultant error in the Majority opinion sustaining Respondent's exception thereto), I would hold that Respondent violated MRPC 1.4(a), in addition to the violations otherwise held by the Majority opinion.