919 A.2d 1194

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**John Lyster HILL.**

**No. 77, Sept. Term, 2005.**

Court of Appeals of Maryland.

March 21, 2007.

---

James P. Botluk, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel for Atty. Grievance Com'n), for petitioner.

John Lyster Hill, Annapolis, for respondent.

Argued before BELL, C.J., RAKER,*WILNER, CATHELL, BATTAGLIA, GREENE and THEODORE G. BLOOM, (Retired, specially assigned), JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition for Disciplinary or Remedial Action against John Lyster Hill, the respondent. The petition charged that, in representing two clients, the respondent violated Rules 1.3, Diligence,[2] 1.4, Communication,[3] 8.1, Bar Admission and Disciplinary Matters,[4] and 8.4, Miscon-

---

\* Wilner, J., now retired, participated in the hearing and conferencing of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Rule 16–751, as relevant, provides:

    "(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

    *See also* Rule 16–743, which specifically provides, in the context of the Peer Review Committee recommendation, that "[t]he Commission may (1) approve the filing of a Petition for Disciplinary or Remedial Action[.]"

2. Rule 1.3 requires "[a] lawyer [to] act with reasonable diligence and promptness in representing a client."

3. Rule 1.4, as relevant, provides:

    "(a) A lawyer shall:

    "(2) keep [a] client reasonably informed about the status of [a] matter; [and]

    "(3) promptly comply with reasonable requests for information.

    "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

4. Rule 8.1 provides, as relevant:

    "An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

    "(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or

duct,[5] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812.

We referred the case, pursuant to Rule 16–752(a),[6] to the Honorable Dennis M. Sweeney, of the Circuit Court for Howard County, for hearing pursuant to Rule 16–757(c).[7] Following a hearing, at which the respondent appeared and participated, the hearing court found facts by the clear and convincing standard and drew conclusions of law, as follows.

The respondent was retained by Edward Beier "to prepare and obtain an Eligible Domestic Relations Order ('EDRO')," necessary to enable him to obtain half of his ex-wife's State employee's retirement benefit. In his engagement letter to Mr. Beier, the respondent conditioned the commencement of work on the matter on the payment by Mr. Beier of a minimum fee of $500.00. Although $200.00 of that amount was paid on the date of retention, the balance was not paid until

---

disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

**5.** Rule 8.4, as relevant, provides:
"It is professional misconduct for a lawyer to: * * * *
"(d) engage in conduct that is prejudicial to the administration of justice[.]"

**6.** Rule 16–752(a) provides:
"(a) *Order.* Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

**7.** Maryland Rule 16–757(c) provides:
"(c) *Findings and conclusions.* The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

more than three months later.[8]  At that time, the respondent's obligation to prepare the EDRO began.  Despite Mr. Beier's numerous requests that he do so, the respondent did not prepare the EDRO or cause it to be executed prior to Mr. Beier's remarriage and consequent ineligibility to share in his ex-wife's pension.  While admitting that he did not prepare the EDRO and conceding that there was "no good reason for failing to do the work required in Mr. Beier's case," the respondent disputed Mr. Beier's testimony only insofar as it indicated that the respondent falsely had told Mr. Beier that he had prepared the order.

Mr. Beier filed a complaint with the petitioner, which Bar Counsel forwarded to the respondent with the request that he provide a response.  He followed up that letter with three others and three telephone calls.  The respondent did not answer any of the letters or telephone calls or contact bar counsel in connection with the complaint for almost four months.  At that time, he provided Bar Counsel with a written response.  Prior to submitting the written response, he "refunded Mr. Beier's entire fee . . ., admitting that he had done no work on Mr. Beier's case."  The respondent subsequently consented to be, and was, interviewed by an investigator for the petitioner.

In the second matter, the respondent was retained to represent Mr. John W. Wilson "in connection with a domestic relations case involving visitation and access issues concerning Mr. Wilson's daughter."  He was paid a retainer of $2,000.00. He attended, with his client, his client's ex-wife and her counsel, a pre-trial conference in the Circuit Court for Anne Arundel County before a Master, at which an agreement was reached.  That agreement was placed on the record and the respondent "agreed to prepare and submit a written consent order within two weeks of that date."  He did not do so.  Nor had he done so after six months, despite calls from the

---

8.  One month earlier, Mr. Beier purported to pay the balance;  however, the check tendered for that purpose was returned for insufficient funds.

Master's office "inquiring about the status of the order" and calls and two letters from Mr. Wilson.

When the order had not been filed after more than six months, a judge of the Circuit Court issued an Order for the respondent to appear in court and "explain the reason for his failure to submit the order and show cause why sanctions and costs should not be imposed." Without informing his client that the show cause order had been issued or that the parties had been ordered to appear in court, the respondent prepared a Consent Order, apparently sent it to opposing counsel for signature and submitted it, signed by both counsel, to the court on the date scheduled for the show cause hearing. The respondent did not send the Consent Order to his client for review, nor even inform his client that he had prepared one, which had been submitted to and signed by the court.[9]

Bar counsel made two requests of the respondent to produce his file in the Wilson matter. Although they were received, the respondent did not comply. His only explanation for not having done so was: "I knew I messed up with Beier and Wilson, so, I guess I just didn't really want to face it in addition to all the other things that were going on." [10]

Based on the foregoing findings of fact, the hearing court concluded that the respondent, by failing to act expeditiously

---

**9.** This was significant to Mr. Wilson because he maintained that the respondent agreed to let him review the draft of the Consent Order and sign off on it prior to submitting it to the court. After reviewing the Consent Order that the respondent submitted to the court and which the court signed, Mr. Wilson stated that the order did not reflect the agreement placed on the record, a contention that the respondent disputes. The hearing court did not resolve the dispute.

**10.** The other things to which the respondent was alluding were, as found by the hearing court, his arrest, shortly after the pre-trial conference in the Wilson matter, and subsequent placement on probation, for driving under the influence of alcohol; the hospitalization, and subsequent death, of his mother-in-law, with the consequent grieving of his wife; and the behavioral problems-truancy, smoking and theft-of the respondent's eldest daughter. The hospitalization and death of his mother-in-law coincided with the Master's attempt to discover the status of the Consent Order. These matters, in combination, the hearing court found, were disruptive of the respondent's law practice.

in both cases, by not timely preparing the EDRO in the Beier case, and by his delay in preparing the Consent Order in the Wilson case, violated Rule 1.3. The inaction in the Beier case was, in addition, it opined, a violation of Rule 8.4(d). The hearing court further concluded that in each case, the respondent violated Rule 1.4. In the Beier case, it consisted of "failing to keep Mr. Beier reasonably informed of the status of the matter and by failing to respond to his inquiries."[11] Its gravamen, in Wilson, was the respondent's failure: to respond to his client's letters and telephone messages; to notify him of the show cause order, for, "as a party, [he was required] to be present in court for a hearing;" and to notify his client that the Consent Order had been submitted and entered.

Rule 8.1 was violated as to Beier, the hearing court concluded, when the respondent did not timely respond to Bar Counsel's request for a response to the Beier complaint. Moreover, it characterized the delay as "wilful and without excuse." With respect to Wilson, the hearing court found that the respondent did respond timely; however, the failure to produce the file, as requested, was reprehensible and, thus, a violation of Rule 8.1(b).

The hearing court determined that the respondent violated Rule 8.4(d). It reasoned:

"[The respondent]'s failure to file the consent order within 15 days, as ordered by the Court, his failure to respond to inquiries by Master Muskin's office, and his continued failure to submit the Consent Order led to Judge Silkworth ordering him to show cause why sanctions should not be imposed. [The respondent] then took an additional two months to submit the order, waiting until the date set for the show cause hearing to do so. Respondent's actions and inattention to the requirements set by the Court constitute

---

**11.** Although of the belief that "[o]n a few occasions when Mr. Beier called in the autumn of 2004, [the respondent] led Mr. Beier to believe that a draft EDRO was being prepared," it found that "[t]here is not clear and convincing evidence that [the respondent] affirmatively misrepresented to Mr. Beier that the EDRO had been prepared and presented to the counsel for the retirement system."

conduct prejudicial to the administration of justice in violation of Rule 8.4(d) of the Maryland Rules of Professional Conduct."

Having found the rules violations charged, the hearing court also offered findings of mitigation:

"The Court finds that [the respondent]'s inattention to these cases was caused in part by his dealing with his alcohol abuse problem and DUI arrest, and then dealing with additional family responsibilities caused by the illness and death of his mother-in-law. [The respondent]'s daughter's behavioral problems in 2005 also distracted him from his practice. Master Muskin's administrative assistant . . . noted in her affidavit that [the respondent]'s failure to act promptly was not his typical behavior. In the period from the summer of 2004 through spring of 2005, and continuing to the present, [the respondent]'s only support staff has been a receptionist. [The respondent] has not added any support staff. Since the end of his probationary period, [the respondent] has not continued to engage in any therapy, treatment or support group activity to ensure that he remains sober. There is no evidence presented that [the respondent] has relapsed into excessive use of alcohol."

Neither the petitioner nor the respondent filed exceptions to the hearing court's findings of fact or conclusions of law. While both appeared at oral argument and offered their respective recommendations orally, only the petitioner submitted a written recommendation. In that recommendation, notwithstanding the hearing court's finding that the misconduct was mitigated, in part, by the respondent's alcoholism, his mother-in-law's illness and subsequent death and his daughter's behavioral problems and despite its concession that no harm was done, the petitioner urged the respondent's suspension for a one year period. In so doing, it emphasized the respondent's dereliction in not preparing the EDRO, as he had been paid to do, his dilatoriness in preparing a consent order that he agreed to complete within fifteen days of the agreement it would reflect, the fact that the two instances of misconduct occurred at the same time and both involved

rather simple and straightforward matters and the failure "to respond to Bar Counsel in a timely and complete manner."

The respondent, like the petitioner, expressly did not except to the hearing court's factual finding or conclusions of law, stating that he had no quarrel with them and that they accurately reflect what took place, his action or inaction, as the case may be, the mitigating factors present and the remorse that he felt. He added that he was ashamed of what took place and was not proud of having let his clients down, for which he stated he had already apologized to them. Emphasizing the mitigating factors the hearing court found and relying on *Attorney Grievance Comm'n v. Tolar*, 357 Md. 569, 745 A.2d 1045 (2000), the respondent urged a reprimand.

We have said so often, that it is now well settled, that the purpose of attorney discipline is not to punish the erring attorney but to protect the unsuspecting public. Most recently, we elucidated the point in *Attorney Grievance Comm'n v. Rees*, 396 Md. 248, 254, 913 A.2d 68, 72 (2006). This purpose is achieved when the sanction imposed is commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Grievance Comm'n v. Kovacic*, 389 Md. 233, 238, 884 A.2d 673, 676 (2005). Of significance to the sanction decision is, inter alia, "whether the attorney has remorse for the misconduct, whether the conduct is likely to be repeated and whether the attorney has a 'prior grievance history.' " *Id.* at 238, 884 A.2d at 676, *quoting Attorney Grievance Comm'n v. Post*, 379 Md. 60, 71, 839 A.2d 718, 724–25 (2003); *Attorney Grievance Comm'n v. Wyatt*, 323 Md. 36, 38, 591 A.2d 467, 468 (1991).

As the petitioner recognizes, this case is reminiscent of *Kovacic* and the case against which it, and the sanction we imposed in that case, was compared, *Tolar, supra,* 357 Md. 569, 745 A.2d 1045. In *Tolar* and in *Kovacic*, each of the respondent attorneys was found to have violated the same Rules of Professional Conduct, Rules 1.3, 1.4, and 8.1(b), by failing to complete a QDRO, failing to communicate with her client and failing to respond timely to Bar Counsel's inquiries.

We imposed a reprimand in *Tolar* and an indefinite suspension in *Kovacic*. We addressed the difference in sanction, and the reasons therefore, in *Kovacic*, explaining:

> "The reprimand in [*Tolar* ] was based largely on the respondent's remorse, a factor that could have been, and apparently was, explored in that case, and that sanction was imposed despite prior unreported reprimands on the responding attorney's record. From the respondent's remorse, another factor, that a repeat of the misconduct was unlikely, admittedly not mentioned, could have been inferred,"

389 Md. at 239, 884 A.2d at 676,[12] and

> "Unlike Tolar, [Kovacic] has no prior attorney grievance history, a factor that supports a disposition similar to the one Tolar received. More important, however, also unlike in *Tolar*, there is neither a finding, nor any basis for mitigating the respondent's misconduct."

*Id. See also Attorney Grievance Comm'n of Maryland v. Lee,* 393 Md. 546, 564–66, 903 A.2d 895, 906–07 (2006) (discussing and contrasting *Kovacic* and *Tolar* ).

■ The respondent's misconduct closely resembles the misconduct found in *Kovacic* and *Tolar*. It is, however, more extensive from the perspective of the number of rules violated and the number of clients affected. In addition to Rules 1.3, 1.4, and 8.1(b), the rules violated by Kovacic and Tolar, the respondent also was found to have violated Rule 8.4(d). Moreover, rather than one client being affected by the misconduct, as was the case with those attorneys, here the respondent's misconduct affected two clients.

As between *Tolar* and *Kovacic*, this case is most like *Tolar*.[13] Like Tolar, the respondent has a prior grievance

---

12. We also noted, as a factor in imposing a reprimand, Tolar's history of rendering assistance to the Director of the Lawyers Assistance Program of the Maryland State Bar Association.

13. The petitioner, at oral argument, distinguished this case from *Tolar* on the basis of the extent of the involvement of the attorney in that case in the work of the Maryland State Bar Association's Lawyer Assistance

history, two dismissals with a warning, as opposed to unreported reprimands. Moreover, he presented evidence, and the hearing court found the existence, of mitigating factors, which, it concluded, were responsible, at least in part, for the respondent's misconduct. Additionally, the respondent has expressed remorse, appearing in this Court and stating that he is ashamed of his misconduct, suggesting, at least by inference, that these matters are not reflective of how he practices law. And, consistently, there was testimony, in the form of the affidavit of Master Muskin's administrative aide, that the respondent's behavior during this period was out of character for the respondent. Taken together, it further may be inferred that the respondent's misconduct is not likely to be repeated.

Accordingly, although more serious than in *Tolar,* and therefore demanding a more substantial sanction, this case is a far cry from *Kovacic.* We believe that the public will be protected if a thirty-day suspension from the practice of law is imposed.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOHN LYSTER HILL.

---

Program and on the degree of cooperation she displayed, once she decided to cooperate. It noted that Tolar was dubbed "[his] man in Havana" on the Eastern Shore by Richard Vincent, the Director of the Lawyer Assistance Program. It characterized Tolar as being "extremely cooperative."