936 A.2d 839

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Victor MBA–JONAS.

Misc. Docket (Subtitle AG) No. 55 Sept. Term, 2006.

Court of Appeals of Maryland.

Dec. 4, 2007.

Harrell, J., filed a dissenting opinion in which Battaglia, J., and Wilner, J., Retired, sitting by special assignment, joined.

Gail D. Kessler, Assistant Bar Counsel (Melvin Hirsman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Melvin G. Bergman of Greenbelt, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE, (Retired, Specially Assigned), ALAN M. WILNER, (Retired, Specially Assigned), DALE R. CATHELL, (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

The respondent, Victor Mba–Jonas, was admitted to the Bar of this Court on April 6, 1995. On March 20, 2007, this Court indefinitely suspended Mba–Jonas, with the right to apply for readmission after 90 days, because of misconduct in the management of his escrow account. *Attorney Grievance Commission of Maryland v. Mba–Jonas,* 397 Md. 690, 919 A.2d 669 (2007). In the present matter, the Attorney Grievance Commission, by Bar Counsel, filed a petition for disciplinary action against Victor Mba–Jonas based upon allegations of substantially the same type of conduct involved in Mba–Jonas's previous case. Specifically, Bar Counsel alleged violations of Rules 1.1,[1] 1.15,[2] 8.1[3] and 8.4[4] of the Maryland Lawyers' Rules of

---

1. Rule 1.1 of the Maryland Rules of Professional Conduct provides as follows:

   **"Rule 1.1. Competence.**
   "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

2. Rule 1.15 of the Maryland Rules of Professional Conduct states:

   **"Rule 1.15. Safekeeping Property.**
   (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of

other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for the purpose.

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in the course of representation a lawyer is in the possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute."

3. Rule 8.1 of the Maryland Rules of Professional Conduct provides:

"**Rule 8.1.    Bar Admission and Disciplinary Matters.**

"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact;  or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

4. The relevant portions of Rule 8.4 of the Maryland Rules of Professional Conduct provide as follows:

"**Rule 8.4    Misconduct.**

"It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice."

5. Maryland Rule 16–607 provides in relevant part:

and Maryland Code (2000, 2004 Repl.Vol.), §§ 10–306 and 10–307 of the Business Occupations and Professions Article.[6] The matter was referred to Judge Maureen M. Lamasney of the Circuit Court for Prince George's County for a hearing and factual findings pursuant to Maryland Rules 16–752(a) and 16–757(c).[7]

---

"**Rule 16–607.  Commingling of funds.**

"a.  General prohibition.  An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule."

\* \* \*

Maryland Rule 16–609 states as follows:

"**Rule 16–609.  Prohibited transactions.**

"An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.  An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer."

**6.**  Sections 10–306 and 10–307 of the Business Occupations and Professions Article provide as follows:

" **§  10–306.  Misuse of trust money.**

"A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

" **§  10–307.  Disciplinary action.**

"A lawyer who willfully violates any provision of this Part I of this subtitle, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10–303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide."

**7.**  Maryland Rules 16–752 and 16–757 state in relevant part as follows:

"**Rule 16–752.  Order designating judge.**

"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record.  The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discover and setting dates for the completion of discover, filing of motions and hearing."

"**Rule 16–757.  Judicial hearing.**

\* \* \*

"(c) Findings and conclusions.  The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law."

The facts, as found by Judge Lamasney, are essentially as follows. On April 26, 2005, Bar Counsel received a letter from the Bank of America stating that there was an overdraft on Mba–Jonas's attorney escrow account in the amount of $39.79. Bar Counsel sent three letters to Mba–Jonas requesting an explanation for the overdraft but received no response. After a fourth letter was sent to Mba–Jonas's attorney, Bar Counsel received a letter, forwarded by Mba–Jonas's attorney, from McDonald C. Okechukwo of the Bank of America. The letter was in reference to the overdraft, but, as Judge Lamasney found, it was "totally non-responsive." Thereafter the Attorney Grievance Commission performed a "bank record analysis," sometimes referred to as a "trust account analyzer," for the period of January 1, 2005 to October 15, 2005, on Victor Mba–Jonas's escrow account at the Bank of America.

The central feature of the allegations against Mba–Jonas in this case concerns the maintenance of his escrow account, and those facts were not in dispute. Regarding the allegations, Judge Lamasney found as follows:

"The trust analyzer revealed that the trust account had a negative balance on January 10, [2005]. The respondent had only $47.88 in the bank when he wrote a $60.00 check payable to Agyeiwah Adwua. A negative balance of $12.12 ensued.

"On 2–2–05 a $3,000 deposit was immediately reduced to $2958.74. The second negative balance occurred on April 20, 2005 and resulted in the letter from the bank to the Attorney Grievance Commission.

"On April 27, 2005, a deposit of $9,000 attributable to Terri Belt was immediately reduced to $8,930 and brought the account to a positive level.

"During this period of time, the following clients of Mr. Mba–Jonas had amounts left over in their accounts that were not disbursed:

| April Langley | $105.00 |
|---|---|
| Terri Belt | $100.00 |
| Solange Tang | $100.00 |
| Nathan Drakeford | $ 30.00 |
| Joseph Ebotarrey | $100.00 |
| Christian Njoku | $ 15.00 |
| Agnes Mongare | $100.00 |
| Kufre Akpaidem | $ 68.80 |
| Chinyere Uduhiri | $ 25.00 |
| Joselyne Edmond | $ 66.00 |
| Abel Getachew | $ 25.00 |
| S. Olorungbohunmi | $400.00 |

"The undisbursed money totaled $1,732.80. Bank fees for the account were $370.05, approximately 25% of the total. Mr. Mba–Jonas testified that the money was his, not the clients.

"In two cases, more money was given out than taken in. In the matter of Hilaria Navarro, $15.00 more was expended. In the case of Dora Lima, the amount was $966.85.

"There were four occasions during this time period when money directed to one client was used for another. The respondent wrote a partial settlement check for $60.00 to Agyewash Adwua, when only $47.88 in funds remained. Secondly, on February 1, 2005 a deposit of $3000 was made from Progressive Insurance for Ekaette Essien. Because of the negative balance, the amount was immediately reduced to $2,958.74. On April 11,2005, a check was written to Godwin Ihionu for $79.41 with only $39.62 in the account.

"[Fourth], a deposit made for the benefit of Terri Belt in the amount of $9,000 became $8,930.21 because of the negative balance. Additionally, the respondent admitted to writing check number 3017 to cash."

Judge Lamasney made the following conclusions of law regarding Mba–Jonas's management of the escrow account:

"**Rule 1.15   Safekeeping Property**

The respondent failed to safeguard the property of his clients. He failed to keep his clients' property separate from his own. He maintained his own funds far in excess of the amount needed to cover expenses. He failed to gener-

ate complete records in the first place; whatever records he did produce he has not maintained for five years.

"**Rule 8.4   Misconduct**

"The manner in which the escrow account was maintained is conduct prejudicial to the administration of justice. The Court does not believe—nor has it been suggested—that the state of his escrow account is the result of dishonesty, fraud, deceit or misrepresentation.

"**Maryland Rule 16–607—Commingling Funds**

"The respondent did not withdraw his own [money] from the account money with any degree of promptness on multiple occasions.

"**Maryland Rule 16–609 Prohibited Transactions**

"The respondent acknowledges a check made out to cash.

"**Business Occupations & Professions Article, 10–306 Misuse of Trust Money**

"All of the above violations constitute a misuse of trust money under this section."

The remaining issue in this case concerns Mba–Jonas's interactions with Bar Counsel investigator Marc Fiedler and the letter from McDonald Okechukwu of the Bank of America. Marc Fiedler testified that he asked Mba–Jonas to produce certain documents so that he could review them, and Mba–Jonas failed to produce the documents. According to Mba–Jonas's testimony, "the files were not immediately accessible; ... he had difficulty obtaining them; ... the cost of photocopying was expensive, and ... he was dealing with the consequences of the suspension mandated by the Court of Appeals." In addition, Fiedler testified that he gave Mba–Jonas information on how to balance his account and reviewed with him the requirements of an escrow account. Judge Lamasney stated that the "situation with his escrow account has not improved since that time."

As previously indicated, Bar Counsel received a letter signed by McDonald C. Okechukwu of the Bank of America concerning the overdraft.[8]  Marc Fiedler testified that he

---

8.   The letter read in full as follows:

inquired if Mba–Jonas knew the author of the letter because the letter was nonresponsive and was from a branch of the Bank of America located some distance from Mba–Jonas's office. Fiedler further testified that Mba–Jonas said that he did not know McDonald Okechukwu and that Mba–Jonas repeated the same answer after Fiedler "said he hoped he would not find out that the respondent had represented the banker." According to Judge Lamasney's findings, Mba–Jonas "did in fact represent the banker in a divorce in 1999." Mba–Jonas testified that Fiedler did not ask whether Mba–Jonas knew the author of the letter, but whether the author was a friend. Mba–Jonas testified that, to this question, he answered "no." He also stated that he went to that particular branch of the Bank of America because he was shopping with his family in the area.

Regarding the letter from McDonald Okechukwu and the interactions with Marc Fiedler, Judge Lamasney found that Mba–Jonas violated Rule 8.1. Judge Lamasney stated as follows:

### "Rule 8.1   Bar Admission and Disciplinary Matters

"The Court finds that the letter obtained from the Bank of America is another example of the extreme carelessness exhibited by the respondent and not an attempt at deliberate deception. Since the letter was so clearly non-responsive, there was no question that it would be accepted as a resolution of the overdraft by the Attorney Grievance Commission.

"To Whom It May Concern:
"On August 2nd, 2005, a deposit of $15,800.00 was made into the above referenced customer's account, which funds were delayed until August 11, 2005.
"Our customer issued a check which cleared his account on August 11, 2005 with the assumption that the funds would be available on the same business day. However, according to our deposit agreement the funds are available the next business day after the expiration of hold. In this case, the funds were made available on August 12th, 2005 causing our customer's account to become overdrawn."
Judge Lamasney noted that the record did not reflect that the deposit referenced in the letter was actually made.

"However, the conversation with Mr. Fiedler is a different matter. The Court finds the testimony of Mr. Fiedler to be credible and finds that the respondent deliberately tried to conceal his connection to the banker. At the very least, he failed to volunteer the information since it was clear Mr. Fiedler's questions were directed to ascertain the relationship between the banker and respondent.

"The Court finds that he failed to provide information to the Attorney Grievance Commission despite their lawful demand. While the respondent was going through a difficult time in his life, at the time this case was instigated he was in the midst of the prior proceeding. He produced some documents in that matter, but almost none in this. His cooperation decreased, even with the prior grievance and the suspension by the Court of Appeals. That process should have induced more cooperation rather than less."

Finally, Judge Lamasney also found in mitigation that Mba–Jonas "had family problems that required a substantial amount of attention during this period of time."

## II.

Bar Counsel filed no substantive exceptions to Judge Lamasney's findings of fact or conclusions of law. Bar Counsel filed a few technical exceptions to correct minor typographical errors in dates set forth in Judge Lamasney's findings and conclusions, and we sustain those exceptions.

■ Victor Mba–Jonas filed a single exception objecting to Judge Lamasney's finding of fact and conclusion that he violated Rule 8.1 with respect to his discussions with Marc Feidler. Mba–Jonas argues that "a fair reading of the record would indicate that Bar Counsel failed to prove ... by clear and convincing evidence" that he made a false statement regarding his relationship with Okechukwu. Further more, Mba–Jonas asserts that "he had no motive to hide any association with Mr. Okechukwu ... or to be disingenuous."

We overrule this exception. We accept Judge Lamasney's finding and legal conclusion as she had the opportunity to weigh the credibility of the witnesses. In our review of such disciplinary hearings, we accept the hearing judge's findings of fact as *prima facie* correct unless shown to be clearly erroneous. *Attorney Grievance Commission of Maryland v. Siskind,* 401 Md. 41, 54, 930 A.2d 328, 335 (2007); *Attorney Grievance Commission of Maryland v. Ward,* 394 Md. 1, 16, 904 A.2d 477, 486 (2006). In addition, ' "[w]eighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder." ' *Attorney Grievance Commission of Maryland v. Robertson,* 400 Md. 618, 630, 929 A.2d 576, 583 (2007), quoting *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998). Judge Lamasney found the testimony of Marc Fiedler to be credible, and there is nothing in the record to indicate that such a finding is clearly erroneous. Because the factual finding is not clearly erroneous, and the conclusion of law is supported by the factual finding, we overrule Mba–Jonas's exception relating to his violation of Rule 8.1. *Attorney Grievance Commission of Maryland v. Robertson, supra,* 400 Md. at 629, 929 A.2d at 583 ("When the factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled"); *Attorney Grievance Commission of Maryland v. Robertson, supra,* 400 Md. at 629, 929 A.2d at 583, *Attorney Grievance Commission of Maryland v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006).

## III.

Bar Counsel recommends that Victor Mba–Jonas be disbarred. In support of this recommendation, Bar Counsel cites Mba–Jonas's failure to improve his management of his escrow account even after Marc Fiedler provided him with information on how to do so. In addition, Bar Counsel cites Mba–Jonas's failure to disclose the full extent of his relationship with Okechukwu as reason for disbarment. Bar Counsel also maintains that the present matter is distinguishable from

a series of cases applying suspensions of varying lengths for violations involving the mismanagement of escrow accounts. In particular, Bar Counsel cites *Attorney Grievance Commission of Maryland v. Obi,* 393 Md. 643, 904 A.2d 422 (2006); *Attorney Grievance Commission of Maryland v. Rose,* 383 Md. 385, 859 A.2d 659 (2004); *Attorney Grievance Commission of Maryland v. Awuah,* 374 Md. 505, 823 A.2d 651 (2003); *Attorney Grievance Commission of Maryland v. McClain,* 373 Md. 196, 817 A.2d 218 (2003); *Attorney Grievance Commission of Maryland v. DiCicco,* 369 Md. 662, 802 A.2d 1014 (2002).

Victor Mba–Jonas argues that the appropriate sanction is a ninety day suspension to run concurrently with his indefinite suspension ordered by this Court *in Attorney Grievance Commission of Maryland v. Mba–Jonas, supra,* 397 Md. 690, 919 A.2d 669. Noting that this matter "arose in an almost contemporaneous framework as [his previous] disciplinary violations," Mba–Jonas argues the problems in the instant case are similar to those in his prior case. Furthermore, he reasons that the misrepresentation to Marc Fiedler "never created a cloud over Bar Counsel's investigation." Mba–Jonas also argues that Judge Lamasney essentially made alternative findings regarding his violation of Rule 8.1. He points to the language from Judge Lamasney's findings and conclusions stating that he "deliberately tried to conceal" information and that he "[a]t the very least, failed to volunteer the information." Mba–Jonas argues that this Court should consider only the latter finding. Finally, he asserts that to impose greater sanctions than those imposed in his previous case "would needlessly punish him for essentially the same conduct that could have been dealt with in one case, rather than two."

As discussed, Victor Mba–Jonas has previously been the subject of disciplinary proceedings. In *Attorney Grievance Commission of Maryland v. Mba–Jonas, supra,* 397 Md. 690, 919 A.2d 669, this Court addressed violations occurring in 2003 and 2004. In large part, the violations found in Mba–Jonas's first case are similar to those in the present matter. As here, his previous violations involved mismanagement of his escrow

account including three instances where the escrow account was overdrawn, poorly maintained settlement sheets and records, failure to keep a ledger, and post dated checks. This Court held in the previous case that Mba–Jonas violated Rules 1.15, 8.4(a) and (d) of the Rules of Professional Conduct, Maryland Rules 16–604, 16–607, and 16–609, and Maryland Code (2000, 2004 Repl.Vol., 2006 Supp.), § 10–306, of the Business Occupations and Professions Article.

An attorney's disciplinary history is among the factors this Court considers in determining the appropriate sanction for misconduct. *Attorney Grievance Commission of Maryland v. Sapero,* 400 Md. 461, 490, 929 A.2d 483, 501 (2007); *Attorney Grievance Commission of Maryland v. Hill,* 398 Md. 95, 103, 919 A.2d 1194, 1198 (2007). In the present matter, we note that the disciplinary violations are substantially similar to those in Mba–Jonas's previous case and to a certain extent the time periods involved in the two actions overlap. This Court filed its opinion in the first case on March 20, 2007. The proceedings in the instant matter were initiated on December 19, 2005, when the Attorney Grievance Commission filed in this Court a Petition for Disciplinary or Remedial Action. Given the overlap in time period and the substantially similar violations involved, we believe it is appropriate to consider Mr. Mba–Jonas's present violations as a continuation of his previous improper conduct. In considering a sanction, we therefore consider Mba–Jonas's conduct, including his prior violations, as a whole.

Moreover, this Court also considers "the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Commission of Maryland v. Robertson, supra,* 400 Md. at 642, 929 A.2d at 590 (internal quotations omitted); *Attorney Grievance Commission of Maryland v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). Neither of the actions against Mba–Jonas involves an intent to defraud, deceive, or steal from his clients. Judge Lamasney found in the previous case that" [c]learly, he had no intent to defraud or steal from his clients. In fact, many of his

problems resulted from his desire to accommodate his clients and to keep them satisfied with his representation." *See Attorney Grievance Commission of Maryland v. Mba–Jonas, supra,* 397 Md. at 698, 919 A.2d at 674. Likewise, in the present matter, Judge Lamasney found that the "Court does not believe—nor has it been suggested—that the state of [Mba–Jonas's] escrow account is the result of dishonesty, fraud, deceit or misrepresentation."

We disagree that the cases involving suspensions, cited by Bar Counsel, are distinguishable. Bar Counsel relied on most of the same cases to recommend an indefinite suspension in Mba–Jonas's prior disciplinary proceeding. We believe that the cases again support an indefinite suspension. The only case not relied on by Bar Counsel in the first matter, but cited here, is *Attorney Grievance Commission of Maryland v. Awuah, supra,* 374 Md. 505, 823 A.2d 651. *See also Attorney Grievance Commission v. Awuah, supra,* 346 Md. 420, 697 A.2d 446. In *Awuah,* an attorney who previously had been indefinitely suspended with a right to reapply after 60 days, was disbarred after he continued to practice law in spite of his suspension. The initial suspension involved similar offenses to the present matter. Specifically, Awuah failed to maintain proper trust accounts, commingled client funds with his own, and failed to keep proper records. *Awuah,* 374 Md. at 508, 823 A.2d at 653. In the subsequent case, however, Awuah was disbarred because he continued to practice law in violation of Rule 5.5(a). *Awuah,* 374 Md. at 525–526, 823 A.2d at 663–664. In the present matter, Mba–Jonas did not behave similarly. He did not continue to practice law subsequent to his suspension. Also, as Judge Lamasney found, Mba–Jonas did not deceive his clients.

Bar Counsel also points to Mba–Jonas's violation of Rule 8.1 to support the disbarment recommendation. According to Judge Lamasney, however, Mba–Jonas, "at the very least, failed to volunteer the information [about his representation of Okechukwu] since it was clear that Fiedler's questions were directed to ascertain the relationship between the banker and

the respondent." Under the circumstances, this does not warrant disbarment.

■ In determining the appropriate sanction to apply, we do not seek to punish the erring attorney but to protect the public. *Attorney Grievance Commission of Maryland v. Robertson, supra,* 400 Md. at 642, 929 A.2d at 590; *Attorney Grievance Commission of Maryland. v. Mba–Jonas, supra,* 397 Md. at 702, 919 A.2d at 677; *Attorney Grievance Commission of Maryland v. Rees,* 396 Md. 248, 254, 913 A.2d 68, 72 (2006). We disagree, however, with Mba–Jonas, that a 90 day suspension, concurrent with his indefinite suspension, is the appropriate sanction. Rather, viewing Mba–Jonas's two cases in conjunction, we believe the appropriate sanction is a continuation of the indefinite suspension with the right to reapply for readmission after six months from the date this opinion is filed.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST VICTOR MBA–JONAS.*

HARRELL, BATTAGLIA and WILNER, JJ., Dissent.

Dissenting Opinion by HARRELL, J. Which BATTAGLIA and WILNER, JJ. join.

Although I agree with the Majority opinion Parts I and II, I disagree with the sanctions analysis and result in Part III. The Majority opinion concludes that the time periods involved in the present case and Respondent's prior disciplinary action, *Atty. Griev. Comm'n v. Mba–Jonas,* 397 Md. 690, 919 A.2d 669 (2007) (*"Mba–Jonas I"*), overlap "to a certain extent." Maj. op. at 346, 936 A.2d at 846. It reaches this conclusion on the basis that the Court filed its opinion in *Mba–Jonas I* on 20 March 2007 and the proceedings in the present case were initiated on 19 December 2005. *Id.* On the basis of this

observation in gross, the Majority opinion penultimately expresses the view that it is "appropriate to consider [Respondent's] present violations as a continuation of his previous improper [and substantially similar] misconduct." *Id.* Therefore, for sanctions purposes, the Majority opinion considers the misconduct in both cases as constituting a "whole." The focus of the Majority opinion is wrong.

The actual misconduct in *Mba–Jonas I* occurred over the period June 2003—June 2004. *Mba–Jonas I,* 397 Md. at 695–97, 919 A.2d at 672–74. The misconduct upon which the present case relies occurred during December 2004—October 2005. Respondent had been given the benefit of advice from Petitioner's investigator, Mr. Fiedler, as early as 23 January 2004, about the specific record-keeping requirements of the Maryland Rules of Professional Conduct, as well as having a monitor of his bookkeeping practices from March 2004 to at least June 2004 (*Mba–Jonas I,* 397 Md. at 695, 919 A.2d at 672) under a failed conditional Diversion Agreement. Notwithstanding these affirmative efforts by others to get him to straighten out his record-keeping, Respondent persisted in the present case to ignore what was expected of him, after he no longer could claim ignorance of the requirements, over a substantially longer period of time than was embraced by them is conduct in *Mba–Jonas I.*

To my thinking, it is not the overlap of the prosecution and pendency of these cases that should be the focus of the sanctions analysis, but rather the actual dates of the misconduct. There was a clear separation of the misconduct of *Mba–Jonas I,* and that in the present case. The separation becomes even more meaningful in light of the external efforts made to get Respondent to conform to the ethical norms and his continued refusal and failure to do so. Simply put, there is no "whole" or single unit of prosecution (to borrow a phrase from another legal context) here.

Moreover, I am troubled by Respondent's effort, clumsy though it was, to explain away his misconduct through the disingenuous solicitation and tender of Mr. Okechukwu's let-

ter. Respondent was found by the hearing judge to have "deliberately tried to conceal his connection to [Mr. Okechukwu]," a former client of Respondent.

This record convinces me that Respondent remains resolutely oblivious to the ethical expectations and requirements for the safekeeping and accounting of trust monies and seems prepared to be devious and unforthcoming when sought to be held accountable for his actions. In order to protect the public from the probable continuing perpetration of Respondent's misconduct and to set a proper example for the Bar as to the tolerance limits for this sort of ongoing pattern of misconduct, I would disbar Respondent.

Judge BATTAGLIA and Judge WILNER authorized me to state that they join the views expressed in this dissent.