950 A.2d 820

**ATTORNEY GRIEVANCE COMMISSION of Maryland**

v.

**Emmanuel Damascus AKPAN.**

**Misc. AG No. 26, Sept. Term, 2007.**

Court of Appeals of Maryland.

June 19, 2008.

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Maryrose Ozee Nwadike, Silver Springs, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE (Retired, Specially Assigned), IRMA S. RAKER (Retired, Specially Assigned), DALE R. CATHELL (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE, J., Retired, Specially Assigned.

On August 20, 2007, the Attorney Grievance Commission of Maryland, by Bar Counsel, filed in this Court a "Petition For Disciplinary Or Remedial Action" against the respondent, Emmanuel Damascus Akpan. Mr. Akpan was admitted to the Bar of this Court on June 16, 1994; he also has been admitted to practice law in several other jurisdictions. He maintains an office for the practice of law in Silver Spring, Maryland.

The Attorney Grievance Commission in the petition alleged that Mr. Akpan, in connection with his representation of Mr. Julius K. Muli, violated several Maryland Lawyers' Rules of Professional Conduct. Pursuant to Maryland Rules 16–752(a) and 16–757(c), this Court referred the matter to Judge Eric M. Johnson of the Circuit Court for Montgomery County.[1] Judge Johnson's findings and conclusions, in relevant part, are as follows (footnotes omitted):

"Bar Counsel alleges that Mr. Akpan violated MRPC 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.5(a) (Fees), 1.16(d) (Declining or Terminating Representation), and 8.4(c),(d) (Misconduct).

---

1. Maryland Rules 16–752(a) and 16–757(c) state as follows:
   "**Rule 16–752. Order designating judge.**
   "(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions and hearing."
   "**Rule 16–757. Judicial hearing.**
   ⁂   ⁂   ⁂
   "(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law."

"On December 21, 2007, this matter was heard in the Circuit Court for Montgomery County, before Judge Eric M. Johnson. At the conclusion of the hearing, this Court dictated into the record a statement of its findings of fact and conclusions of law with respect to alleged violations of MRPC 1.1 (Competence), 1.3 (Diligence), and 1.5(a) (Fees), finding no violation of those rules of professional conduct.

"The only issues that remain are the alleged violations of MRPC 1.4 (Communication), 1.16(d) (Declining or Terminating Representation), and 8.4(c),(d) (Misconduct).

\* \* \*

"Mr. Akpan, a member of the Maryland Bar since June 16, 1994, represented Mr. Muli commencing on or about January 10, 2006. Mr. Akpan's retainer agreement states that Mr. Akpan's law firm will represent Mr. Muli 'at the second interview for obtaining [permanent] residence.' The interview was to be conducted by the Citizenship and Immigration Service (CIS) of the United States Department of Homeland Security, and its purpose was to discuss the adjustments of Mr. Muli's immigration status and his application for permanent residence.

"Although Mr. Akpan wrote to CIS for a postponement of the interview, no postponement occurred and neither he nor Mr. Muli appeared. Subsequently, Mr. Muli was placed in removal proceedings. A trial in Immigration Court was scheduled for June 21, 2006.

"Mr. Muli notified Mr. Akpan that he had been placed in removal proceedings and met with Mr. Akpan on March 22, 2006. Mr. Akpan explained to Mr. Muli the nature of removal proceedings. Since Mr. Muli was not given a second interview, Mr. Akpan discussed with Mr. Muli the need to file a new I–130 Application for Alien Relative in order, to obtain that second interview. Even though the January 10, 2006, retainer agreement may not have contemplated the filing of an I–130 petition (because one had been filed prior to Mr. Akpan's involvement in the case), Mr. Akpan filed the petition,

signed by Ms. Boone, Mr. Muli's wife, on or about April 4, 2006. Mr. Akpan testified that the representation he provided after March 22, 2006, with respect to re-filing the I–130 petition was covered by his initial retainer agreement of January 10, 2006.

"On June 21, 2006, neither Mr. Muli nor Mr. Akpan attended the removal proceedings. Although Mr. Akpan advised Mr. Muli in preparation for the removal proceedings and talked about attending the removal proceedings together with Mr. Muli, Mr. Akpan claims that he did not represent Mr. Muli in the removal proceedings. He notes that the retainer agreement, signed on January 10, 2006, states, *inter alia,* 'this fee does not include professional services in connection with administrative or court review. . . .' Mr. Akpan testified that Mr. Muli neither retained him nor executed a retainer agreement for that service.

"Mr. Akpan had expressed to Mr. Muli the importance of Mr. Muli's appearance at the removal proceeding; however, Mr. Muli did not attend because he mis-calendared the date and relied upon Mr. Akpan to notify him of the trial date based on the assumption that Mr. Akpan would be representing him with respect to the removal proceedings.

\* \* \*

"Maryland Rule 16–757(b) provides that '[t]he petitioner has the burden of proving the averments of the petition by clear and convincing evidence.'

"**I.   No attorney-client relationship existed with respect to the removal proceedings before the Immigration Court.**

"The Restatement (Third) of the Law Governing Lawyers addresses the formation of an attorney-client relationship as follows:

'A relationship of client and lawyer arises when:

'(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and . . .

'(b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services....'

While an attorney-client relationship existed with regards to services relating to securing a second interview as evidenced by the January 10, 2006, retainer agreement, there is insufficient evidence to support the existence of an attorney-client relationship arising out of Mr. Akpan's alleged representation at the removal proceedings on June 21, 2006. While the record is replete with assumptions that Mr. Muli made with respect to Mr. Akpan's alleged representation at the removal proceedings, scant, if any, testimony supports the assertion that Mr. Muli manifested to Mr. Akpan his intent that Mr. Akpan provide legal services with respect to the removal proceedings. Thus, the Court does not find an attorney-client relationship existed with respect to the removal proceedings by clear and convincing evidence.

"II.  Communication

"MRPC 1.4 states that '[a] lawyer shall: ... (2) keep the client reasonably informed about the status of the matter....' 'A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.'

██ "Mr. Akpan did not promptly inform his client of the scope of his representation when Mr. Akpan became aware of Mr. Muli's removal proceedings. After becoming aware of Mr. Muli's removal proceedings, Mr. Akpan took steps to secure Mr. Muli with a second interview by re-filing the I–130 petition. Mr. Akpan did not inform Mr. Muli that he was not representing Mr. Muli with respect to the removal proceedings, as he should have. Even though Mr. Akpan had the basis to believe that Mr. Muli had not engaged him for the purpose of pursuing his interest in the Immigration Court, he nevertheless violated Rule 1.4(a) and (b) as he communicated to Mr. Muli ... information which led Mr. Muli to incorrectly

assume that he would be represented when such was not the case.

## "III.   Misconduct.

■   "MRPC 8.4 states that '[i]t is professional misconduct for a lawyer to . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation [and] (d) engage in conduct that is prejudicial to the administration of justice.' There is no evidence that Mr. Akpan engaged in conduct involving any dishonesty, fraud, deceit or misrepresentation.   However, Mr. Akpan's failure to comply with MRPC 1.4 in his failure to communicate with his client is conduct that was prejudicial to the administration of justice under subsection (d).   Mr. Akpan's failure to clarify and define the scope of his representation left Mr. Muli to assume that Mr. Akpan was going to represent Mr. Muli at the removal proceedings and that Mr. Akpan was going to inform Mr. Muli of the June 21, 2006, trial date.   Mr. Akpan's conduct in failing to properly communicate the scope of his representation resulted in Mr. Muli's failure to appear at the removal proceeding.   Although Mr. Muli admits that he did not appear for the removal proceedings due to his oversight, he relied on Mr. Akpan to inform him of the trial date because he incorrectly assumed that Mr. Akpan was representing him in that matter.

## "IV.   Declining or Terminating Representation

■   "MRPC 1.16(d) states that '[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred.'   There is no evidence that Mr. Akpan's representation of Mr. Muli with respect to the January 10, 2006, retainer agreement terminated.   Mr. Akpan testified that the re-filing of the I–130 petition after Mr. Muli received the Notice to Appear was a continuation of the services under that retainer agreement.   Further,

it was Mr. Muli's belief that Mr. Akpan's representation continued and extended to his removal proceedings. Therefore, the allegation that Mr. Akpan violated MRPC 1.16(d) is without merit.

"For the reasons set forth in this opinion, the Court finds that Mr. Akpan violated MRPC 1.4 and 8.4(d), but did not violate MRPC 1.1, 1.3, 1.5(a), 1.16(d), or 8.4(c)."

The Attorney Grievance Commission filed no exceptions to Judge Johnson's findings and conclusions. The Commission did point out, in its recommendation to this Court regarding the appropriate sanction, that Mr. Akpan had previously been reprimanded in May 2004 pursuant to Maryland Rule 16–737.[2] Based on Judge Johnson's determination that Mr. Akpan violated Rules 1.4 and 8.4(d) of the Maryland Lawyers' Rules of Professional Conduct, and considering the prior reprimand, the Attorney Grievance Commission has recommended that Mr. Akpan be reprimanded by this Court.

Mr. Akpan filed seven exceptions to Judge Johnson's findings and conclusions, arguing that particular findings, and the

---

**2.** The prior reprimand letter stated as follows:

"Dear Mr. Akpan:

"The Attorney Grievance Commission, at its meeting on May 19, 2004, approved the proposed Reprimand agreed upon by you and Bar Counsel and directed that Bar Counsel administer this letter of reprimand to you.

"Pursuant to Maryland Rule 16–737, you are hereby reprimanded as follows:

"The Respondent represented Grace Idun, a Ghanan citizen, commencing in March 2003. Ms. Idun sought the Respondent's assistance in connection with an Immigration case. She desired to change the venue of the case from Buffalo, New York, to Baltimore, Maryland, and to remain in the United States. The Respondent's Motion to change venue filed in the Immigration Court in Buffalo did not comply with that jurisdiction's local rules. The Respondent and his client failed to appear at the scheduled Master's hearing and the Respondent failed to file a motion to waive the presence of Ms. Idun. Ms. Idun was ordered removed from the United States to Ghana, in absentia. The Respondent's actions violated Rules 1.1 and 1.3 of the Maryland Rules of Professional Conduct."

"The Maryland Rules provide that a reprimand constitutes discipline which is public and open to inspection. The Commission will be providing a copy of this letter to the Complainant."

conclusions resulting therefrom, were "unsupported by clear and convincing evidence" and were "clearly erroneous." Mr. Akpan has recommended that "this Court should dismiss the disciplinary action."

The first of Mr. Akpan's exceptions is that Judge Johnson's

"findings of facts are unsupported by clear and convincing evidence because the trial court reached its findings without independent expert testimony in the practice of immigration law."

Mr. Akpan complains:

"Bar Counsel failed to present an expert in immigration law and the trial court refused to hear testimony from Mr. Akpan's . . . own expert in immigration law."

As support for the argument that expert testimony was required, the respondent Akpan relies on *Attorney Grievance Commission v. Awuah,* 374 Md. 505, 520–521, 823 A.2d 651, 660 (2003). He also cites two opinions of this Court in attorney malpractice cases, *Franch v. Ankney,* 341 Md. 350, 357 n. 4, 670 A.2d 951, 954 n. 4 (1996), and *Central Cab Co. v. Clarke,* 259 Md. 542, 551–552, 270 A.2d 662, 667–668 (1970). None of these opinions supports the respondent's argument.

The respondent attorney in *Attorney Grievance Commission v. Awuah, supra,* 374 Md. at 520–521, 823 A.2d at 660, made the same argument that the respondent Akpan now makes, and this Court flatly rejected the contention:

"Awuah claims that the trial court did not understand immigration law and that Bar Counsel did not provide an expert to assist the trial judge. The detailed findings of fact, which are *prima facie* correct, not to be disturbed unless clearly erroneous, *Blum,* 373 Md. at 293, 818 A.2d at 230 (citing [*Attorney Grievance Com'n v.* ]*Wallace,* 368 Md. 277, 793 A.2d 535 [ (2002) ]), entered by the trial judge in the record, refute Awuah's contention, and were he to have wished to present any expert to the court, he could have under Md. Rule 5–702. A trial judge is presumed to know the law."

In both *Franch v. Ankney, supra*, 341 Md. at 357 n. 4, 670 A.2d at 954 n. 4, and *Central Cab Co. v. Clarke, supra*, this Court took the position that the need for expert testimony in an attorney malpractice case depended upon the facts or situation in the particular case. *See Central Cab Co.*, 259 Md. at 551–552, 270 A.2d at 667–668 ("In our opinion, however, the present case is not one of those situations in which expert testimony is required. * * * [W]e have found expert testimony not to be required by the facts in this case and ... the lower court should have found as a matter of law that there was a breach of duty by" the attorney).

■ Counsel's assertion, on behalf of Mr. Akpan, that Judge Johnson erred because he "refused to hear testimony from Mr. Akpan's ... own expert in immigration law," is not quite accurate. After a witness had finished testifying, Judge Johnson asked "Who's next?" Counsel for the respondent indicated that an "immigration attorney" would testify as an expert witness. The Deputy Bar Counsel then stated that he had received notice of this witness "last week long after the discovery deadline had passed," and that he had "no opportunity to depose this witness." A colloquy ensued between Judge Johnson and respondent's counsel as to the nature of the witness's testimony and whether the testimony would be helpful. Judge Johnson then commented that he had no "basis of knowledge to challenge" the proposed testimony and that "the immigration attorney would be extremely informative, but not particularly helpful." Next, the following interchange occurred:

"RESPONDENT'S COUNSEL: Okay. I will take the hint, Your Honor. We learn everyday.

"THE COURT: Well, it's not a hint.

"RESPONDENT'S COUNSEL: I will leave her, and I will call [a different witness].

"THE COURT: Okay. You want to let her know she can go?

"RESPONDENT'S COUNSEL: But, Your Honor, may I just let her—yes. I was just going to let her know.

"THE COURT: You can save yourself by telling her that the Court wouldn't allow her to testify. That way you're off the hook for having her sit around here all afternoon.

"(Discussion off the record.)

"RESPONDENT'S COUNSEL: Thank you, Your Honor. It seems obvious that Judge Johnson did not rule that the expert witness could not testify. On the contrary, the respondent's counsel decided not to call the expert witness. The Judge's statement that counsel could tell the witness that "the Court wouldn't allow her to testify," was merely an effort to help the respondent's counsel. Moreover, even if Judge Johnson's remarks were construed as a ruling that the expert witness would not be allowed to testify, the respondent's counsel made no objection.

For the above reasons, Mr. Akpan's first exception is overruled.

Mr. Akpan's remaining six exceptions all relate to Judge Johnson's findings and conclusions concerning representation at the removal proceedings. Those findings and conclusions were that there was "insufficient evidence to support an attorney-client relationship arising out of Mr. Akpan's alleged representation at the removal proceedings," that Mr. Muli assumed that Mr. Akpan would represent Mr. Muli at those proceedings, that "Mr. Akpan did not promptly inform his client of the scope of his representation when Mr. Akpan became aware of [the] removal proceedings," that "Mr. Akpan did not inform Mr. Muli that he was not representing Mr. Muli with respect to the removal proceedings, as he should have," and that Mr. Akpan's failure to communicate properly concerning representation at the removal proceedings, "which led Mr. Muli to incorrectly assume that he would be represented," violated Rules 1.4(a), 1.4(b), and 8.4(d).

In his exceptions, Mr. Akpan asserts that the findings, that Mr. Akpan did not properly communicate to Mr. Muli concerning representation at the removal proceedings, are inconsistent with the finding that no attorney-client relationship existed with respect to representation at the removal proceedings.

Mr. Akpan also asserts that the above-summarized findings, relating to removal proceeding representation, are "clearly erroneous" because Judge Johnson "relied on Mr. Muli's undetailed and incredible testimony." The respondent Akpan takes the position that the evidence which he offered outweighed the testimony from Mr. Muli concerning representation at the removal proceedings. In light of Mr. Akpan's evaluation of the evidence, he concludes that there were no violations of Rules 1.4(a), 1.4(b), and 8.4(d).

We overrule all six of Mr. Akpan's exceptions regarding representation at the removal proceedings. There is no inconsistency between a finding that "there is insufficient evidence to support the existence of an attorney-client relationship" at the removal proceedings, and the findings concerning Mr. Muli's assumption of representation and concerning Mr. Akpan's failure to communicate properly about representation at the removal proceedings.

Judge Johnson's findings of fact, based upon Mr. Muli's testimony, are not clearly erroneous. Maryland Rule 16–759(b), governing the review of a hearing judge's findings in an attorney disciplinary case, specifically provides in relevant part that the Court of Appeals "shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses." *See, e.g., Attorney Grievance Commission v. Harris,* 403 Md. 142, 158, 939 A.2d 732, 742 (2008) ("Consistent with the standard of review for factual findings in attorney discipline cases, we have [reiterated] that the judge 'may elect to pick and choose which evidence to rely upon' "); *Attorney Grievance Commission v. Mba–Jonas,* 402 Md. 334, 344, 936 A.2d 839, 844 (2007) ("We accept [the hearing judge's] finding and [resulting] legal conclusion as she had the opportunity to weigh the credibility of the witnesses. In our review of such disciplinary hearings, we accept the hearing judge's findings of fact ... unless shown to be clearly erroneous"); *Attorney Grievance Commission v. Robertson,* 400 Md. 618, 630, 929 A.2d 576, 583 (2007) (" 'Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks

proper for the fact finder,'" quoting *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998)).

█ Considering that Mr. Akpan did violate the Maryland Lawyers' Rules of Professional Conduct, that the Attorney Grievance Commission has recommended a reprimand as the appropriate sanction for Mr. Akpan's conduct, and that the purpose of these proceedings is not "to punish the erring attorney but to protect the public" (*Attorney Grievance Commission v. Mba–Jonas, supra,* 402 Md. at 348, 936 A.2d at 847, and cases there cited), we agree that the proper sanction is a reprimand.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST EMMANUEL DAMASCUS AKPAN.*